# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                       CRIMINAL ACTION

VERSUS                                        No. 17-23

SONNY SCOTT                               SECTION I

## ORDER & REASONS

Before the Court is *pro se* prisoner and petitioner Sonny Scott's ("Scott") motion[1] to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the motion is granted in part, denied in part and deferred in part, in accordance with this order. With respect to most of Scott's claims, no evidentiary hearing is necessary because they are meritless. However, Scott's substantive Fourth Amendment claim, as well as one of his Sixth Amendment claims for ineffective assistance of counsel, which is predicated on the existence of a valid Fourth Amendment challenge, require an evidentiary hearing to further develop the record.

## I.

On April 6, 2017, Scott pled guilty to a one-count superseding bill of information, which charged him with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); there was no plea agreement.[2] According to the government's factual basis—entered into the record at Scott's rearraignment hearing when he changed his plea to guilty—on

---

[1] R. Doc. No. 73; R. Doc. No. 27, at 1.
[2] R. Doc. No. 27, at 1; R. Doc. No. 26.

January 12, 2017, Drug Enforcement Administration ("DEA") agents and task force officers were conducting surveillance on suspected drug distributors in an area that they knew from experience to be a common location for drug trafficking.[3] At approximately 10:15 p.m., the agents observed Scott meet with another individual in a parking lot located in the area.[4] Scott departed the area quickly, and shortly thereafter the agents located him at a nearby Taco Bell drive-thru.[5] The agents approached Scott to conduct an investigatory stop, handcuffing him to ensure the agents' safety.[6] During a search of his person, the agents found approximately $250 in cash, three grams of heroin, approximately three grams of cocaine, numerous unidentified and individually wrapped pills, and a loaded .38 caliber special Smith & Wesson firearm.[7]

On July 13, 2017, following Scott's guilty plea, which was entered and accepted on April 6, 2017, the Court sentenced Scott to a term of imprisonment of 100 months.[8] Scott appealed his sentence, challenging both this Court's decision to depart upward from his advisory guidelines sentencing range and the extent of the departure.[9] The United States Court of Appeals for the Fifth Circuit affirmed this Court's judgment, and on November 6, 2018, the United States Supreme Court denied Scott's petition

---

[3] R. Doc. No. 29, at 1.
[4] *Id.*
[5] *Id.*
[6] *Id.*
[7] *Id.* at 1–2.
[8] R. Doc. No. 50, at 2.
[9] *See* R. Doc. No. 51, at 1; R. Doc. No. 71, at 3.

for a writ of certiorari.[10] Scott now moves to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255.[11]

## II.

Section 2255 is designed to remedy constitutional errors and certain other injuries that could not be brought on direct appeal and would result in injustice if left unaddressed. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Accordingly, the law allows a prisoner in federal custody to bring a motion to vacate, set aside, or correct his sentence in the court that imposed the sentence based on four grounds for relief:

> the sentence was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, . . . the sentence was in excess of the maximum authorized by law, or [the sentence] is otherwise subject to collateral attack.

28 U.S.C. § 2255(a). The § 2255 proceeding functions as "an independent and collateral inquiry into the validity of [a] conviction." *United States v. Hayman*, 342 U.S. 205, 222–23 (1952).

A defendant may only raise "issues of constitutional or jurisdictional magnitude." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991), *cert. denied*, 502 U.S. 1076 (1992) (citing *Hill v. United States*, 368 U.S. 424, 428 (1962)). Additionally, "[t]he Supreme Court has emphasized repeatedly that a collateral challenge may not do service for an appeal." *Id.* at 231 (internal quotation marks omitted). Thus, a defendant generally "may not raise an issue for the first time on

---

[10] R. Doc. No. 71, at 2; R. Doc. No. 72.
[11] The government has not challenged the motion's timeliness.

collateral review without showing both 'cause' for his procedural default, and 'actual prejudice' resulting from the error." *Id.* at 232 (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).[12] A motion brought pursuant to § 2255 may only be denied without a hearing "if the motion, files, and records of the case conclusively show that the prisoner is entitled to no relief." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

## III.

Scott asserts two grounds for relief. First, he challenges his conviction by arguing that his trial counsel provided him with ineffective assistance.[13] Second, he argues that the law enforcement officers who arrested him for the instant offense violated his Fourth Amendment rights by subjecting him to an unlawful search.[14]

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated a two-part test for determining whether a defendant's assistance of counsel was constitutionally deficient. This test requires the petitioner to show both (1) deficient performance of counsel and (2) resulting prejudice from the deficient performance. *Strickland*, 466 U.S. at 687. The petitioner must satisfy both prongs of the *Strickland* test. *Id.* at 697. A court is not required to address *Strickland*'s two

---

[12] The Supreme Court has recognized one narrow exception to the cause and prejudice test—cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). However, the Supreme Court "has emphasized repeatedly that this exception is limited to 'extraordinary' cases involving 'manifest miscarriage[s] of justice' that would result in the continued incarceration of one actually innocent of the offense." *Shaid*, 937 F.3d at 232 (citations omitted).

[13] *See* R. Doc. No. 73, at 4; R. Doc. No. 80, at 1.

[14] *See* R. Doc. No. 73, at 13.

prongs in any particular order. *Id.* If it is possible to dispose of an ineffective assistance of counsel claim without addressing both prongs, then "that course should be followed." *Id.*

A petitioner can demonstrate deficient performance and establish the first prong by "show[ing] that [his] counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. In evaluating an attorney's past performance on his client's behalf, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. In other words, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* The Court must take care to avoid casting counsel's every "act or omission" in the "harsh light of hindsight." *Bell v. Cone*, 535 U.S. 685, 702 (2002).

*Strickland*'s second prong requires a petitioner to show that his counsel's deficient performance prejudiced him. Prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the judicial proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome" of the proceeding. *Id.* In the context of a guilty plea, the prejudice requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Thus, in challenging a guilty plea on grounds of ineffective assistance, a petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* "[T]he mere *possibility* of a different

outcome is not sufficient. . . ." *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (emphasis added). The petitioner "must affirmatively *prove*, not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (emphasis added). The Court will address Scott's ineffective assistance of counsel claims in turn.

**(i)**

First, Scott argues that his attorney failed to negotiate a favorable plea.[15] As an initial matter, although Scott refers to a plea agreement throughout his motion, there was no plea agreement in this matter: the superseding bill of information charged Scott with one count of being a felon in possession of a firearm, and he pled guilty to that count without having ever been offered a plea agreement by the government.[16]

Under the first prong of the *Strickland* test, Scott must show that his counsel's purported failure "fell below an objective standard of reasonableness." 466 U.S. at 688. To the extent Scott argues that his counsel should have attempted to negotiate a plea agreement, his argument fails because "a defendant has no right to be offered a plea agreement." *Robles-Pantoja v. United States*, No. 09-88, 2015 WL 13534221, at *4 (W.D. Tex. Sept. 30, 2015) (citing *Lafler v. Cooper*, 566 U.S. 156, 168 (2012)). Most courts treat Scott's argument as a "non-starter": because "there is no duty to initiate

---

[15] R. Doc. No. 73, at 5.

[16] *See* R. Doc. No. 26; R. Doc. No. 60, at 15–16 (**THE COURT:** Is there a plea agreement in this case? **AUSA:** No, Your Honor. **THE COURT:** Has the government at any time made any plea offers to Mr. Scott? **AUSA:** No, Your Honor. We discussed the possibility of that[,] but because he's just pleading to that one count, we decided not to even make a plea offer to the defense.).

plea negotiations or request a plea agreement, . . . failing to do so cannot constitute deficient performance under the first prong of *Strickland*." *Id.* (citations omitted).[17]

Furthermore, Scott does not specify what about his plea was unfavorable; nor does he indicate what information his counsel had access to that would have permitted her to successfully negotiate an agreement which would have been advantageous to him. Finally, Scott does not contend that he was offered a more favorable plea but rejected the offer at the advice of his counsel. His allegation is insufficient to overcome the "strong presumption" that his counsel provided him with reasonable, professional assistance. *Id.* at 689; *cf. United States v. Moya*, 676 F.3d 1211, 1214 (10th Cir. 2012) (holding that the defendant's ineffective assistance of counsel claim "lacked any colorable merit," in part because he did not allege any facts suggesting that his attorney could have successfully negotiated a plea agreement with the terms that the defendant desired).

**(ii)**

Scott next argues that his plea was involuntary and unintelligent because his counsel persuaded him to plead guilty by promising him that he would receive a different sentence than the sentence the Court actually imposed.[18] However, Scott's assertion defies his own testimony during his rearraignment. At the hearing, the

---

[17] "[I]f the prosecution does make a 'formal offer[ ] . . . to accept a plea on terms and conditions that may be favorable to the accused,' defense counsel is obligated to communicate that offer to his client." *Robles-Pantoja*, 2015 WL 13534221, at *4 (citing *Missouri v. Frye*, 566 U.S. 134, 145 (2012)). "But this duty to communicate an offer once formally made does not entail a duty to *seek out* an offer in the first instance." *Id.* (citations omitted).

[18] R. Doc. No. 73, at 5.

Court gave an extensive explanation of the charge Scott faced, the maximum sentence that could be imposed in the event of a conviction or a guilty plea with respect to such charge, the rights to which Scott was entitled, and the consequences of waiving those rights by changing his plea. The Court also explained that the sentence he would receive would depend on a number of factors, as illustrated by the following exchange:

> **THE COURT:** Have the sentencing guidelines applicable to your case been explained to you by your counsel?
>
> **SCOTT:** Yes.
>
> **THE COURT:** Do you understand that, although the Court has an obligation to calculate the applicable sentencing guideline range and consider that range, the guidelines are advisory and not binding on the Court?
>
> **SCOTT:** Yes.
>
> **THE COURT:** Do you understand the Court may depart from the guideline range under certain circumstances and [that] there are numerous factors the Court considers [when] fashioning an appropriate sentence?
>
> **SCOTT:** Yes.[19]

Later in the hearing, the Court pointedly asked Scott whether anyone had told him that he would receive a particular sentence.

> **THE COURT:** Has anyone, *including your attorney*, told you what sentence you might receive if I accept your guilty plea?
>
> **SCOTT:** No.[20]

---

[19] R. Doc. No. 60, at 12 (transcript of the rearraignment).
[20] *Id.* (emphasis added).

. . .

> **THE COURT:** Do you understand that any discussions between [you and] your attorney or anyone else about sentencing guidelines are merely rough estimates, and the Court is not bound by those discussions?
>
> **SCOTT:** Yes.

The record reflects that, on the date Scott pled guilty, he understood that the Court was the ultimate decisionmaker as to his sentence and that, in turn, Scott was not guaranteed any precise sentence. "Ordinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty." *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (quoting *United States v. Sanderson*, 595 F.2d 1021, 1021 (5th Cir. 1979). There is nothing in the record to suggest that Scott only pled guilty as the result of a promise that he would receive a specific sentence. In fact, when asked whether he had been influenced or persuaded to plead guilty because of a promise of leniency, he said, "No."[21] And when asked whether he was pleading guilty because he was, in fact, guilty of the crime charged in the superseding bill of information, he answered, "Yes."[22] The Court finds Scott's challenge unavailing.

### (iii)

Scott also argues that his counsel failed to adequately explain his plea to him and that she failed to provide him with enough time to review and consider the plea.[23] For example, he asserts that he was "rushed into trying to understand [the] plea" and

---

[21] *Id.* at 15.
[22] *Id.*
[23] *See* R. Doc. No. 73, at 6–7.

that his counsel did not ensure that Scott understood his rights.[24] Scott argues that, as late as the date on which he was sentenced, he vocalized to the Court that he did not fully understand his plea.[25] Again, the record reflects otherwise.

During his rearraignment, after the Court described each of the rights that Scott was waiving or giving up by pleading guilty, Scott was questioned about whether he understood the consequences of his plea.

> **THE COURT:** Do you understand if I accept your plea of guilty, you would not be entitled to a trial and the government would not be required to prove you're guilty?
>
> **SCOTT:** Yes.
>
> **THE COURT:** Do you understand if you plead guilty and I accept the guilty plea, you would be waiving and giving up your right to trial and all the other rights I just explained to you?
>
> **SCOTT:** Yes.
>
> **THE COURT:** Do you fully understand if I accept your guilty plea, there will be no trial and I will simply enter a judgment of guilty and sentence you on the basis of your guilty plea?
>
> **SCOTT:** Yes.
>
> **THE COURT:** Are you willing to waive and give up your right to trial by jury or judge?
>
> **SCOTT:** Yes.[26]

---

[24] *Id.* at 8.
[25] *Id.* at 7.
[26] R. Doc. No. 60, at 14.

Scott also indicated that he was satisfied with his counsel's assistance leading up to his decision to plead guilty:

> **THE COURT:** Have you had sufficient time to discuss with your attorney the facts of your case and any possible defenses you may have?
>
> **SCOTT:** Yes.
>
> **THE COURT:** Are you entirely satisfied with the advice and services of your counsel?
>
> **SCOTT:** Yes.[27]

Moreover, Scott's plea was not particularly complex or difficult to understand. He was charged with a single count, alleging that he illegally possessed a firearm. At his rearraignment, the Court explained to Scott the charged offense as it was described in the superseding bill of information—namely that he was found in possession of a firearm, having been previously convicted of two felonies.[28]

Scott represented to the Court that he understood the charge against him and what the government would have to prove at trial to convict him.[29] Thus, even assuming that Scott could prove that his counsel's performance fell below an objective standard of reasonableness, he cannot establish that he suffered any resulting prejudice. The Court explained to Scott the nature and consequences of his plea, and he affirmed his understanding of the Court's explanations. Scott cannot now

---

[27] *Id.* at 15.
[28] *Id.* at 8–9.
[29] *Id.* at 10.

successfully argue that, but for his counsel's purported failure to help him understand his plea, he would not have pleaded guilty.[30]

Although Scott now argues that he explained to the Court at the time of his sentencing that he did not fully understand the rights that he was waiving by pleading guilty, the record does not support his contention. Scott *did* indicate that he had not had enough time to review the presentence investigation report (the "PSR") with his counsel;[31] however, the PSR has no bearing on Scott's plea—which he changed to guilty at his rearraignment over two months before he was sentenced. In fact, Scott never mentioned his guilty plea at sentencing.

With respect to his assertion that he did not understand the PSR, when Scott indicated at sentencing that he had not had enough time to review it, the Court gave him additional time to do so:

---

[30] Scott also argues that his plea was based on "bad advice" given to him by his counsel. R. Doc. No. 73, at 6. He argues that he was "misled" into pleading guilty because, in addition to failing to help him fully understand his plea, his counsel "fail[ed] to review[ ] [and] investigate" his case. *Id.* When counsel's alleged error is "a failure to investigate or discover potentially exculpatory evidence, the prejudice inquiry will depend on the likelihood that discovery of the evidence would have led counsel to change [her] recommendation as to the plea." *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1999) (applying *Strickland* and *Hill*); *see also Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993) (noting that, under *Strickland*, a petitioner who alleges a failure to investigate must specify what evidence further investigation would have revealed). Such an inquiry is impossible because Scott has not specified what his counsel failed to investigate or review.

Additionally, when asked at his rearraignment whether his counsel had failed to investigate or follow up on anything related to Scott's defense that he had requested she investigate or follow up on, he answered, "No." R. Doc. No. 60, at 18. His counsel was also asked if she had been given a full opportunity to investigate the facts and law applicable to Scott's case. *Id.* at 17. She answered that she had. *Id.*

[31] *See* R. Doc. No. 65, at 3–4 (transcript of the sentencing).

| | |
|---|---|
| **THE COURT:** | We're going to recess, okay? . . . I don't know how much time you need to ask additional questions. I'll give you as much time as you need, okay? . . . I'm going to recess for 30 minutes. |
| **SCOTT:** | Okay. Thank you, sir. |
| **THE COURT:** | You speak with your counsel and ask any additional questions, and if you need more time after that, you let me know. |
| **SCOTT:** | Okay. Thank you, sir.[32] |

After the recess, the Court clarified with both Scott and his attorney that it was appropriate to proceed with sentencing:

| | |
|---|---|
| **THE COURT:** | Counsel, have you had an opportunity to further discuss the presentence [investigation] report and my minute entry with your client? |
| **COUNSEL:** | Yes, I have, your Honor. |
| **THE COURT:** | . . . [D]id you answer all of his questions? |
| **COUNSEL:** | I believe so. . . . |
| **THE COURT:** | Is that correct, sir? |
| **SCOTT:** | Yes, sir. |
| **THE COURT:** | Do you have any additional questions you'd like to ask counsel? |
| **SCOTT:** | No, sir.[33] |

---

[32] *Id.* at 5.
[33] *Id.* at 7.

The Court then paused the proceedings to allow Scott to read the government's sentencing memorandum and the opposition memorandum filed by Scott's counsel on his behalf, after which the following colloquy occurred:

| | |
|---|---|
| **THE COURT:** | Are you satisfied with the representation you've received by your counsel? |
| **SCOTT:** | Yes, sir. |
| **THE COURT:** | Do you have any other questions that you want to ask counsel outside of my presence? |
| **SCOTT:** | No, sir. |
| **THE COURT:** | Or in my presence? |
| **SCOTT:** | No, sir. |
| **THE COURT:** | All right. . . . [Y]ou've indicated to me that you've read the presentence [investigation] report. Now you've read these two memoranda that have been filed, one by your counsel, and one by the government. You've had an opportunity to speak with counsel about the presentence [investigation] report, about the objections, [and] about the Court's minute entry. Is that all correct? |
| **SCOTT:** | Yes, sir.[34] |

To the extent Scott argues that his counsel failed to provide him with effective assistance at sentencing, in addition to the fact that the record reflects that Scott was satisfied with his counsel's assistance, the Court finds that Scott's counsel provided him with adequate representation. Indeed, his counsel filed multiple objections to the PSR—three of which the Court sustained. Scott has not specified what additional

---

[34] *Id.* at 10.

objections should have been filed; nor has he shown that, had his counsel filed any additional objections, he would have received a more favorable sentence. *See United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004) (explaining that, to show prejudice, a defendant must demonstrate a reasonable probability that, but for his counsel's actions, he would have received a lesser sentence) (citing *United States v. Glover*, 531 U.S. 198, 203 (2001)). Scott may be dissatisfied with the sentence he received, but the Court's decision to depart upward and impose a sentence outside of the guidelines range applicable to his case was based in part on the nature and extent of Scott's criminal history, which could not have been negated by anything his counsel could have said or done.[35]

### (iv)

Scott also claims that his counsel failed to file an appeal despite his request that she do so.[36] This assertion is patently false. Scott's trial counsel filed an appeal shortly after the Court imposed a sentence and issued a judgment.[37] Scott was appointed new counsel in connection with his appeal,[38] and the issues raised on appeal were fully litigated. The Fifth Circuit affirmed this Court's judgment, and the Supreme Court denied Scott's petition for a writ of certiorari.[39]

---

[35] *See id.* at 28–32.
[36] R. Doc. No. 73, at 11.
[37] R. Doc. No. 51.
[38] R. Doc. No. 53.
[39] R. Doc. Nos. 71, 72.

**(v)**

Having reviewed each of the foregoing arguments as to Scott's ineffective assistance of counsel claim, the Court concludes that Scott has failed to establish either prong of the *Strickland* test. He has not demonstrated that his counsel's conduct fell below an objectively reasonable standard; nor has he demonstrated that he suffered any prejudice as a result of the aforementioned aspects of her representation. As a result, with respect to those claims, no evidentiary hearing is necessary, and Scott's petition is denied.

**IV.**

With respect to Scott's final ineffective assistance of counsel claim, the Court finds that an evidentiary hearing is necessary. Scott's final argument as to his first ground for relief is that his counsel was ineffective when she failed to seek suppression of the evidence that was obtained during the search of his person conducted on the night of his arrest.[40] According to Scott, the search was unlawful and conducted in violation of his Fourth Amendment rights.[41] Scott further asserts that his counsel's alleged failure prejudiced the outcome of his case because, "if not for his counsel's deficient performance and unprofessional errors," he would have proceeded to trial.[42] This claim is closely related to Scott's second ground for relief, in

---

[40] R. Doc. No. 73, at 5.
[41] *Id.* In the portion of his motion dedicated to his first claim for relief, ineffective assistance of counsel, Scott provides little detail about his counsel's alleged failure to file a motion to suppress. However, in support of his second claim for relief, Scott argues that the search was unlawful in considerably more detail.
[42] *See* R. Doc. No. 75, at 4, 5.

which he argues a substantive Fourth Amendment claim arising out of the search and seizure that formed the basis of the offense.[43] According to the government, however, Scott's Fourth Amendment claim is procedurally barred as he did not raise it on direct appeal.[44]

"A section 2255 movant who fails to raise a constitutional . . . issue on direct appeal waives the issue for a collateral attack on his conviction, unless there is cause for the default and prejudice as a result." *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000). To establish cause for a procedural default, a petitioner must "show that 'some objective factor external to the defense' prevented him from raising on direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992)). As to the prejudice, it must be "actual." *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001) (quoting *Frady*, 456 U.S. at 167–68). "A mere possibility of prejudice will not satisfy the actual prejudice prong of the cause and prejudice test . . . ." *Shaid*, 937 F.2d at 236.[45]

Scott does not argue that cause exists for his failure to raise his Fourth Amendment argument on direct appeal. But, as the Court has already explained, he *does* argue that his counsel was ineffective by failing to file a motion to suppress the

---

[43] R. Doc. No. 73, at 13.
[44] R. Doc. No. 83, at 3–4.
[45] As previously discussed, *supra* note 12, an exception exists to the cause-and-prejudice test: when a constitutional violation has probably resulted in the conviction of someone who is actually innocent.

evidence obtained from the allegedly unlawful search.[46] "[I]neffective assistance of counsel can meet the cause and prejudice requirement for overcoming procedural default . . . ." *Kallestad*, 236 F.3d at 227. Thus, "[i]f the [Court] determines that [Scott's] trial counsel rendered constitutionally ineffective assistance due to [her] failure to file a motion to suppress, [Scott] will have satisfied the cause-and-prejudice standard." *United States v. Alanis*, 88 F. App'x 15, 22 (5th Cir. 2004).

To establish that his counsel was ineffective—which is required both to prove his remaining Sixth Amendment claim and to overcome the government's allegation that his Fourth Amendment claim is procedurally barred—Scott must demonstrate that his counsel's failure to file a motion to suppress fell below an objective standard of reasonableness and that he was actually prejudiced as a result.

> Because trial counsel's failure to raise a Fourth Amendment claim is at issue, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the [outcome] would have been different absent the excludable evidence in order to demonstrate actual prejudice."

*United States v. Dowling*, 458 F. App'x 396, 397–98 (5th Cir. 2012) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986)). In determining whether counsel's decision was objectively reasonable,

> [the Court] also must consider whether the decision could be construed as "sound trial strategy." If [the Court] conclude[s] that the decision was strategic, conscious, and informed, then [it] should ask whether [the decision] rendered the proceedings obviously unfair.

*Id.* at 440–41.

---

[46] R. Doc. No. 73, at 5, 20.

Pursuant to the Supreme Court's decision in *Terry v. Ohio*, 392 U.S. 1 (1968), "where there is a reasonable and articulable suspicion that a person has committed a crime, a search and seizure is not unreasonable." *United States v. Thomas*, 12 F.3d 1350, 1366 (5th Cir. 1994). "[I]f the detaining officer can 'point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the search and seizure],' the intrusion is lawful." *Id.* (quoting *Terry*, 392 U.S. at 21). Courts "employ a two-part test to determine the legality of police investigatory stops." *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008). First, courts "examine whether the officer's action was justified at its inception, and then inquire into whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Id.* at 435–36 (quoting *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004)). Reasonableness is "measured 'in objective terms by examining the totality of the circumstances.'" *Brigham*, 382 F.3d at 507 (quoting *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)).

"[C]ourts must allow law enforcement 'officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person.'" *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted)). "Any analysis of reasonable suspicion is necessarily fact-specific, and factors which by themselves may appear innocent, may in the aggregate rise to the level of reasonable suspicion." *United States v. Ibarra-Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999). However, "[o]fficers must base their reasonable suspicion on

'specific and articulable facts,' not merely 'inarticulate hunches' of wrongdoing." *Id.*

at 758 (quoting *Terry*, 392 U.S. at 22). Additionally, "a Fourth Amendment violation

occurs when the detention extends beyond [any] valid reason for the stop." *United*

*States v. Santiago*, 310 F.3d 336, 341 (5th Cir. 2002).[47]

The reasonable-suspicion test concerns the basis of the initial detention. *See*

*United States v. Scroggins*, 599 F.3d 433, 441 (5th Cir. 2010). Once the investigatory

stop has occurred, "[i]n order to ensure their safety during the stop, police may frisk

the subject for weapons that they reasonably suspect he may carry." *Id.* "The purpose

of the frisk is to afford an officer the opportunity to protect himself from attack by a

hostile suspect.'" *Id.* (quoting *Adams v. Williams*, 407 U.S. 143, 146 (1972)). However,

*Terry* permits "only a limited pat-down search to determine whether the suspect is

carrying a weapon." *United States v. Zavala*, 541 F.3d 562, 576 (5th Cir. 2008). "If the

protective search goes beyond what is necessary to determine if the suspect is armed,

it is no longer valid under *Terry* and its fruits will be suppressed." *Id.* (quoting

*Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993)).

The facts in the record that pertain to the search are scant, and those facts

that do exist give the Court pause. With respect to the officers' reasonable suspicion,

which served as the basis for the search of Scott's person, the factual basis states only

that Scott was observed in an area that DEA agents knew from prior experience to

be a common location for drug trafficking and that the agents observed Scott meet

---

[47] Additionally, "[a] detention initially authorized by *Terry* can, due to its duration, transform into the equivalent of an arrest." *Lincoln v. Turner*, 874 F.3d 833, 841 n.21 (5th Cir. 2017) (quoting *United States v. Massi*, 761 F.3d 512, 522 (5th Cir. 2014)).

with another individual and "quickly depart" the area.[48] Although the PSR indicates that the agents also witnessed Scott engaging in "what appeared to be a hand-to-hand narcotics transaction,"[49] at sentencing the Court sustained an objection filed by Scott's trial counsel to the inclusion of such information in the PSR. The Court took issue with the uncorroborated description of the alleged transaction, especially considering the fact that the officer was uncertain about what exactly he witnessed and that the government chose not to introduce evidence to prove that the alleged transaction occurred.[50] The contested evidence did not possess sufficient indicia of reliability for its inclusion in the PSR.

The government now contends that, at a suppression hearing, an agent would have testified that he "believed" Scott took part in a hand-to-hand drug transaction.[51] In support of this contention, the government submitted a report completed by one of the agents involved in Scott's arrest, which states that "[a]gents observed SCOTT meet with an individual and conduct[ ] what experienced law enforcement officers believed to be[ ] a 'hand to hand' narcotics transaction."[52] However, the government acknowledges that the agent who would have testified at a suppression hearing as to his "belief" would have also testified that he did not actually see a hand-to-hand drug transaction occur because his view was partially obstructed.[53]

---

[48] R. Doc. No. 29, at 1.
[49] R. Doc. No. 36, at 5.
[50] R. Doc. No. 65, at 14.
[51] R. Doc. No. 86, at 2.
[52] R. Doc. No. 86-1, at 4.
[53] R. Doc. No. 86, at 2.

The government also emphasizes that the area where Scott was initially observed was known to officers as a common location for drug trafficking.[54] This information is not, by itself, sufficient to justify the agents' search. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) (noting that, although a location's characteristics are relevant to determining whether "circumstances are sufficiently suspicious to warrant further investigation," "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime"); *see also United States v. Hill*, 752 F.3d 1029, 1035 (5th Cir. 2014) ("The government cannot . . . justify a warrantless search or seizure with nothing more than incantations about the 'proverbial 'high crime area.''") (citation omitted).

Finally, the government focuses on the presence in the area of an Audi that belonged to the intended target of the agents' investigation.[55] The government notes that Scott was searched and arrested around the same time that the target left the area, drove elsewhere, and met with a different individual who was planning to sell the target heroin.[56] However, the government does not explain how the target's conduct on the night of Scott's arrest is relevant: the agents did not observe Scott meet or interact with the target, and the agents stopped Scott at a nearby Taco Bell, whereas the target's alleged drug-related meeting occurred at a Wal-Mart.[57]

---

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *See id.*

According to the government, considered in totality, the facts demonstrate that the agents' investigatory stop was grounded in a reasonable suspicion. But, without further information, and without providing Scott with an opportunity to contest such facts, the Court cannot conclude that the investigatory stop was valid under *Terry*.

Moreover, there is nothing in the record explaining why Scott's trial counsel chose not to file a motion to suppress, making it difficult to determine whether her failure to do so was a deliberate and strategic decision—let alone a reasonable one. Based on the evidence before the Court, the Court cannot conclude that a motion to suppress would have failed. And because Scott contends that he would have proceeded to trial if such a motion had been filed and granted—a logical conclusion and likely result considering that the evidence obtained as a result of the search was the sole evidence in the case—the Court also cannot conclude that Scott did not suffer any prejudice as a result of his counsel's decision not to file the motion.[58]

---

[58] In a supplement to his § 2255 motion, Scott argues that his counsel also rendered ineffective assistance because she failed to inform him that his plea would bar him from challenging the legality of the search on direct appeal. R. Doc. No. 80, at 1. He argues that, as a result of her alleged error, his plea was not knowing and voluntary. *Id.* However, even assuming Scott's counsel committed error, he cannot demonstrate that he was prejudiced by this purported failure because he expressly acknowledged his waiver of the Fourth Amendment issue on the record in a conversation with the Court. After the government's attorney read the factual basis for the plea into the record, the following exchange occurred:

> **THE COURT:** Do you understand that by pleading guilty and admitting to the facts in the factual basis, you're waiving your right to raise a challenge later to the legality of the government's search and seizure on January 12, 2017?
>
> **SCOTT:** Yes.

Ultimately, the facts evidenced in the record do not "conclusively show that [Scott] is entitled to no relief." *Bartholomew*, 974 F.2d at 41. An evidentiary hearing is therefore necessary to develop the record and, in turn, to allow the Court to resolve Scott's remaining claims. *See United States v. Samaniego*, 532 F. App'x 531, 535 (5th Cir. 2013) ("Given the lack of any factual findings at an evidentiary hearing, or a response from [the petitioner's] trial attorney, there is nothing in the record showing counsel's reasons for not filing a motion to suppress or whether his performance was constitutionally deficient for failing to do so.").[59]

---

| | |
|---|---|
| **THE COURT:** | Do you understand that you'll not be able to raise such a challenge after you plead guilty? |
| **SCOTT:** | Yes. |
| **THE COURT:** | Do you still wish to proceed with your guilty plea? |
| **SCOTT:** | Yes. |

R. Doc. No. 60, at 22.

[59] There is support in the case law for the government's argument that "a § 2255 petitioner typically may not raise a Fourth Amendment claim," R. Doc. No. 86, at 3. *See United States v. Diaz*, 733 F.3d 371, 376 n.2 ("With regard to the Fourth Amendment claims, these were waived by the guilty plea."); *see also Cavitt*, 550 F.3d at 435. However, as the government acknowledges, Scott's Fourth Amendment claim is "inextricably intertwined with [his] claim that his counsel rendered ineffective assistance in respect to failing to pursue a motion to suppress." *Cavitt*, 550 F.3d at 435. Accordingly, the Court's "inquiry into the errors claimed entails an assessment of [Scott's] putative Fourth Amendment claim." *Id.* "Revisiting [his counsel's] decision not to file a motion to suppress . . . is critical because '[e]vidence obtained by the government in violation of a defendant's Fourth Amendment rights may not be used to prove the defendant's guilt at trial.'" *Id.* (quoting *United States v. Thomas*, 12 F.3d 1350, 1366 (5th Cir. 1994)).

24

**V.**

Accordingly,

**IT IS ORDERED** that Scott's motion is **GRANTED IN PART, DENIED IN PART** and **DEFERRED IN PART**, in accordance with this order.

**IT IS FURTHER ORDERED** that an in-chambers status conference is scheduled for **JUNE 4, 2019** at **2:00 P.M.**

**IT IS FURTHER ORDERED** that an evidentiary hearing with respect to Scott's substantive Fourth Amendment claim, as well as his related Sixth Amendment claim, shall be held in the undersigned's courtroom on a date to be scheduled at the status conference.

**IT IS FURTHER ORDERED** that the Office of the Federal Public Defender for the Eastern District of Louisiana shall appoint counsel to represent Scott in connection with the evidentiary hearing.

New Orleans, Louisiana, May 28, 2019.

_____

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**