UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 17-23 |
| v. | * | SECTION: "I" |
| SONNY SCOTT | * | |

\* \* \*

## GOVERNMENT'S SUPPLEMENTAL RESPONSE TO PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE UNDER 28 U.S.C. § 2255

The United States of America, through the undersigned Assistant United States Attorney, hereby opposes petitioner Sonny Scott's motion under 28 U.S.C. § 2255, Rec. Docs. 73, 80, 107, 116, 122, and provides supplemental briefing as permitted by the Court's order dated February 4, 2020. Rec. Doc. 117.

Granting Scott's § 2255 motion would require finding that an experienced criminal defense lawyer and member of the CJA panel, whose professional judgment must be given "a heavy measure of deference," *see Strickland v. Washington*, 466 U.S. 668, 691 (1984), made strategic decisions that were so unreasonable that they violated prevailing professional norms and deprived Scott of his Sixth Amendment right to counsel. The record before the Court does not support such a finding, and Scott's arguments to the contrary do not overcome the "strong presumption" that counsel's conduct "might be considered sound trial strategy." *See Strickland*, 466 U.S. at 689. The government responds to the claims in Scott's most recent supplemental filing, *see* Rec. Doc. 122, and reiterates its position that Scott's attorney was not constitutionally deficient when she decided against filing a motion to suppress.

I. **Counsel understood the law related to searches and seizures, and Scott did not demonstrate otherwise during the evidentiary hearing.**

The Court should not assume that an experienced criminal defense lawyer and member of the CJA panel misunderstood basic Fourth Amendment concepts such as reasonable suspicion and investigatory stops under *Terry v. Ohio*, 392 U.S. 1 (1968). *See* Rec. Doc. 122, pp. 12-19 (arguing that counsel's decisions were based on "a misapprehension of the law"). During the evidentiary hearing, counsel confirmed her understanding of the applicable legal standard, namely, whether the agents had reasonable suspicion of criminal activity based on the totality of the circumstances. *See* Tr. at 19-21, 31, 45, 51. Counsel's description matches the standard used by the Fifth Circuit. *See United States v. Darrell*, 945 F.3d 929, 932 (5th Cir. 2019) ("[W]e must answer only whether, under the totality of the circumstances, the officers had reasonable suspicion to stop Darrell as he approached Ms. Smith's house."). Moreover, during the evidentiary hearing, counsel and the Court had a back-and-forth about the totality of the circumstances, including that Scott was in a high-crime area and that the agents were investigating a known drug dealer who drove a black Audi parked at the motel. *See* Tr. at 31.

That Scott disagrees with his former counsel's legal conclusion under *Terry* does not mean that counsel misapprehended the law concerning investigatory stops. This is particularly true considering that reasonable suspicion is "not a finely-tuned standard" and its contours "remain somewhat abstract." *Darrell*, 945 F.3d at 932-33 (quotation marks omitted).[1] If Scott had questions about counsel's understanding of certain aspects of *Terry* law, he could have asked them at the evidentiary hearing. *See United States v. Shepherd*, 880 F.3d 734, 742 (5th Cir. 2018)

---

[1] As counsel testified—and as the Fifth Circuit has held—cases involving reasonable suspicion are "very fact specific." Tr. at 19; *see also United States v. Brigham*, 382 F.3d 500, 507 (5th Cir. 2004) ("Reasonableness, measured in objective terms by examining the totality of the circumstances, eschews bright-line rules, instead emphasizing the fact-specific nature of the inquiry.") (quotation marks, brackets, and ellipsis omitted).

(evidentiary hearing established that attorney was unaware of case that may have rendered client's offense a non-crime); *United States v. Juarez*, 672 F.3d 381, 388 (5th Cir. 2012) (evidentiary hearing established that attorney had "never heard of" potential defense). Instead, Scott extrapolates from portions of testimony that evince counsel's clear understanding of *Terry* but that do not explicitly elaborate on the underlying legal theories. *See* Rec. Doc. 122, pp. 14-19. Scott then asserts that counsel was not only incorrect but at a loss as to "the governing Fourth Amendment principles and standards." *See* Rec. Doc. 122, p. 17 n.5. There is no evidence before the Court that counsel was unaware of fundamental criminal law concepts.[2]

All that is left is Scott's disagreement with counsel's assessment under *Terry*. That disagreement does not overcome the presumption that counsel knew the applicable legal standards. *See Strickland*, 668 U.S. at 689. If Scott believed that counsel was ignorant of "the governing Fourth Amendment principles and standards," it was his burden to show it. *See Blanton v. Quarterman*, 543 F.3d 230, 235 (5th Cir. 2008) ("*Strickland* provides a two-pronged standard, and the petitioner bears the burden of proving both prongs."). Because Scott has not satisfied his burden, the Court should reject the claim that counsel misapprehended the law.

**II.     There is no failure to investigate claim properly before the Court, and, even if there were, such a claim would be meritless.**

In recent filings, Scott has attempted to shoehorn a failure to investigate claim into his § 2255 motion alleging a separate deficiency for failure to file a motion to suppress. *See* Rec. Doc. 107, p. 11 n.1; Rec. Doc. 122, pp. 12, 19-23, 25-27. In his original pro se filing, Scott mentioned his attorney's failure to "review [and] investigate" the case, *see* Rec. Doc. 73, p. 6, and her "failure to investigate the case at bar," *see* Rec. Doc. 73, p. 10, only in passing. The

---

[2] Among other things, counsel testified that she receives annual training, including from the Federal Public Defender's Office, on topics such as *Terry*, probable cause, and other search and seizure issues. Tr. at 26.

gravamen of Scott's pro se filing was that he was subjected to an unlawful search and that his attorney failed to subject his case to meaningful adversarial testing when she decided against filing a motion to suppress. *See* Rec. Doc. 73, p. 8; *see also* Rec. Doc. 73, pp. 14-19. Scott did not describe any specific information that his attorney should have investigated or discovered, such as "allegedly false statements made by a witness." *See United States v. Singleton*, No. 14-168, 2017 WL 3894687, at *5 (E.D. La. Sep. 6, 2017) (Africk, J.). In its order denying most of Scott's claims and granting an evidentiary hearing on the Fourth Amendment claim, the Court similarly focused on the question of whether counsel should have filed a motion to suppress based on the information in front of her. *See* Rec. Doc. 88, pp. 16-24; *see also Strickland*, 466 U.S. at 689 ("A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."). The Court also dismissed any potential claim for failure to investigate as "impossible because Scott has not specified what his counsel failed to investigate or review." Rec. Doc. 88, p. 12 n.30.

Scott's belated attempt to raise a new failure to investigate claim now, nine months after his original pro se filing and fourteen months after his judgment became final, is impermissible under the rules that apply to § 2255 motions. *See* Rec. Doc. 73, p. 28 (original pro se filing mailed on April 5, 2019); Rec. Doc. 72 (letter from Supreme Court announcing denial of petition for writ of certiorari dated November 5, 2018); *see also Clay v. United States*, 537 U.S. 522, 527 (2003) ("Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires."). Scott's new claim is untimely because it does not relate back to his original pleading under Federal Rule of Civil Procedure 15(c)(1). The Fifth Circuit has applied Rule 15 to § 2255

proceedings, holding that a claim of ineffective assistance of counsel that raised a new ground for relief did not relate back to a previous claim of ineffective assistance of counsel under a different theory. *See United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009). Here, Scott's new claim involves "entirely distinct types of attorney malfeasance" from the claim asserted in his original pro se filing: his counsel's failure to discover new facts versus his counsel's failure to act based on the facts already in front of her. *See Gonzalez*, 592 F.3d at 680 (brackets omitted). Because failure to investigate is a new, distinct claim that does not relate back, and because the new claim was first raised over one year after Scott's conviction became final, it is untimely, and the Court should disregard it. *See* 28 U.S.C. § 2255(f)(1).

Additionally, Scott's new failure to investigate claim is improper because it was made after the government filed its response to Scott's pro se § 2255 motion. *See* Rec. Doc. 83 (government's response dated May 9, 2019). Here again, Rule 15 applies. *See United States v. Trevino*, 554 F. App'x 289, 292-93 (5th Cir. 2014). According to Rule 15, "a party may amend its pleading once as a matter of course within 21 days after service of a responsive pleading." *Id.* (ellipsis and brackets omitted). "Where the 21 days expired prior to the amendment of the pleading, a party may amend its pleading once with the opposing party's consent or the court's leave." *Id.* at 293 (quotation marks omitted). Although a pro se litigant's reply that raises new issues may be construed as a motion to amend the original § 2255 motion, *see id.*, Scott's most recent filings were made by appointed counsel and are not entitled to the same liberal construction. Even if the Court interpreted Scott's most recent filings as requests to amend his original § 2255 motion, it would be acting well within its discretion if it refused to consider the new claim. *See United States v. Cervantes*, 132 F.3d 1106, 1111 (5th Cir. 1998).

5

Further, Scott's failure to investigate claim, even if it overcame its procedural defects, fails on the merits. The law from the Fifth Circuit could not be clearer that a failure to investigate claim must do more than vaguely gesture at counsel's failure to discover new facts. *See Adekeye v. Davis*, 938 F.3d 678, 683 (5th Cir. 2019) ("A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."). Scott devotes much of his most recent filing to criticizing his attorney's failure to collect additional information without stating what the attorney should have found. *See* Rec. Doc. 122, pp. 12, 19-23, 25-26. Scott lists several pieces of evidence that he assumes counsel could have obtained, including body camera footage, security camera footage, and eyewitness testimony, but does not (1) state that he has reviewed this evidence or is otherwise familiar with its contents, or (2) explain what specifically in the evidence would have been helpful to his case. *See* Rec. Doc. 122, p. 21.[3] Because Scott chose not to testify at the evidentiary hearing and did not call any other witnesses, his argument is again based on extrapolations from bits and pieces of evidence and broad criticism of counsel's conduct. If Scott believed that this was a viable claim, he should have built a record supporting it by, for example, establishing what specifically counsel should have uncovered. *See Adekeye*, 938 F.3d at 683.

---

[3] Scott has never alleged that he was anywhere other than the motel and the Taco Bell on the night he was stopped or that he is actually innocent of possessing the firearm that was the basis of his conviction. The only remaining conclusion is that Scott believes this evidence would show that he was not engaged in a hand-to-hand transaction. Counsel testified at the evidentiary hearing that Scott told her he did not participate in a hand-to-hand transaction. Tr. at 21, 59. She did not testify that she believed Scott was lying. *See* Tr. at 54. Rather, she weighed what she thought Scott's testimony would be at a suppression hearing against what she believed the agents' testimony would be, plus other factors such as the motel's location in a high-crime area and the agents' investigation into the driver of the black Audi. *See* Tr. at 21, 54-55. The evidence described in Scott's filing would have had no effect on these factors.

To support his claim, Scott cites cases that use the word "investigate" to describe an attorney's general responsibility to conduct discovery, understand the applicable law, and review any available defenses. *See* Rec. Doc. 122, pp. 19-20, 24-25 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986); *Strickland*, 466 U.S. at 691; *Holsomback v. White*, 133 F.3d 1382, 1388 (11th Cir. 1998)). These cases do not stand for the proposition that an attorney must conduct a roving inquisition into every possible lead, particularly in cases where, as here, the defendant has "backed off" his request to file a motion to suppress and communicated his intention to plead guilty. *See* Tr. at 32-33. Moreover, the cases cited in Scott's filing are distinguishable.

In *Morrison*, the attorney "failed to file a timely suppression motion, not due to strategic considerations, but because, until the first day of trial, he was unaware of the search and of the State's intention to introduce [a] bedsheet into evidence." 477 U.S. at 385. "Counsel was unapprised of the search and seizure because he had conducted no pretrial discovery." *Id.* Unlike *Morrison*, there was no comparable failure to investigate here, where the case "wasn't complicated," counsel reviewed the discovery (including the agents' report of the stop), and counsel discussed the case with Scott. *See* Tr. at 5-6, 12; *see also Murray v. Maggio*, 736 F.2d 279, 282 (5th Cir. 1984) ("Murray has not alleged any additional facts that could have been uncovered by additional investigation. This was not a complicated case and the legal issues were not complex."). In other words, this case does not involve "a total failure to conduct pre-trial discovery," *see Morrison*, 477 U.S. at 386, but is instead a run-of-the-mill prosecution where counsel had no issues receiving and reviewing discovery from the government. *See* Tr. at 30-31.

In *Holsomback*, a case involving sexual abuse of a child, the attorney failed to obtain medical records that would have shown no evidence of abuse. *See* 133 F.3d at 1387. The Eleventh Circuit held that, because the attorney never contacted the physicians who examined

7

the victim or subpoenaed the medical records, "he remained entirely unaware" of how such evidence would have helped the defendant's case. *Id.* at 1388. Scott has not pointed to any piece of evidence in this case that comes close to the medical records in *Holsomback*. The court in *Holsomback* could look to the medical records and articulate exactly how the defendant would have used them at trial. *See id.* at 1388 ("[D]espite the fact that counsel himself viewed the case essentially as a swearing match, turning entirely on whether the jury believed the child, he made no effort to support Holsomback's claim of innocence with disinterested medical testimony or other medical evidence suggesting that [the victim's] allegations were not credible.") (quotation marks and brackets omitted). Scott, on the other hand, has not identified any specific evidence, and his assertions that he would have benefited from further investigation are nothing more than speculation. Additionally, at least one court has distinguished *Holsomback* because "[c]hild sexual abuse cases, unlike other cases, are unique, requiring heightened diligence on the part of defense counsel." *Medearis v. United States*, 469 F. Supp. 2d 779, 789 n.5 (D.S.D. 2006) (quotation marks omitted).

For these reasons, the Court should either disregard Scott's new failure to investigate claim entirely or deny it as meritless. As with every other claim in this § 2255 proceeding, it was Scott's burden to overcome the strong presumption that his attorney provided competent representation. He has not timely raised the failure to investigate claim, and, even if he had, he has not developed a record that would support it.

### III. Scott's counsel was not constitutionally deficient when she decided against filing a motion to suppress.

A decision against filing a motion to suppress is deficient if "no competent attorney would think a motion to suppress would have failed[.]" *Premo v. Moore*, 562 U.S. 115, 124

8

(2011).[4] This is a "most substantial burden." *Id.* at 745; *see also Padilla v. Kentucky*, 559 U.S. 356, 371 (2010) ("Surmounting *Strickland*'s high bar is never an easy task."). As the Supreme Court has stated, the analysis cannot take into account "the distorting effects of hindsight." *See Strickland*, 466 U.S. at 669; *see also Moore*, 562 U.S. at 125; *Wiggins v. Smith*, 539 U.S. 510, 522 (2003); *Bell v. Cone*, 535 U.S. 685, 698 (2002).

Based on the facts in this case, it would be error for the Court to find that Scott's counsel was deficient. Counsel testified that she did not file a motion to suppress because she believed—after reviewing the discovery, discussing the motion with Scott, and performing legal research for similar cases—that a motion would be meritless. Tr. at 5, 19-22, 29-30, 32-33.[5] Counsel believed that the better bet was for Scott to accept responsibility and hope that he could make it through sentencing with as little attention as possible paid to the drug evidence. *See* Tr. at 58-60.

In certain respects, the strategy paid off. As counsel hoped, the government did not charge Scott with any drug-related offenses, and the Court sustained counsel's objection to the PSR regarding a four-level enhancement for Scott's use of a firearm to further drug trafficking. *See* Rec. Doc. 36, p. 21 (objection to PSR arguing, "There is no relationship between the gun

---

[4] In *Moore*, the Supreme Court stated that this was "the relevant question under *Strickland*" for a suppression-related claim such as Scott's. *See Moore*, 562 U.S. at 124 (citing *Morrison*, 477 U.S. at 382; *Harrington v. Richter*, 562 U.S. 86, 109-10 (2011)).

[5] Indeed, the uncontroverted testimony from the evidentiary hearing is that counsel believed that Scott "backed off" his request to file a motion to suppress after they discussed it. Tr. at 33. Counsel did not perceive the filing of a motion to suppress as "a sticking point" for Scott, nor did she perceive Scott as being "adamant" about filing a motion. *See* Tr. at 32-33. Further, during Scott's rearraignment, the Court asked, "In connection with the defense of your case, did your counsel fail to investigate or follow up on anything that you requested that she investigate or follow up on, which would include, but not be limited to the interviewing of witnesses and/or the locating and reviewing of documents?" Rec. Doc. 60, p. 18. Scott responded, "No." Rec. Doc. 60, p. 18. Scott also confirmed that he had sufficient time to discuss his case and any possible defenses with his attorney and that he was entirely satisfied with her advice and services. Rec. Doc. 60, p. 15. This was not a case where Scott was unwilling to bring issues to the Court's attention, as was made clear during his sentencing when he complained that he needed more time to review the PSR. *See* Rec. Doc. 65, pp. 3-7. There were no such complaints during Scott's rearraignment.

possession and petty drug possession. Mr. Scott is an admitted drug abuser and he possessed what was considered amounts for drug personal use."); Rec. Doc. 65, p. 16 (sentencing transcript of Court sustaining objection).[6] There is no telling how the proceedings would have gone if counsel had filed what she believed was a meritless motion to suppress and drawn attention to Scott's possession of heroin, cocaine, and plastic bags. *See Bates v. Sec'y, Fla. Dep't of Corrs.*, 768 F.3d 1278, 1296 (11th Cir. 2014) ("Objecting might make things worse by highlighting what would have otherwise been an entirely unremarkable and unmemorable detail."). That the Court ultimately applied an upward departure and variance based on Scott's criminal history has no bearing on the wisdom of counsel's strategic choice at the time Scott pleaded guilty. Considering the substantial deference the Court must give to counsel's tactical decisions under *Strickland*, it would be error to conclude that counsel was objectively unreasonable in pursuing this strategy.

To the extent Scott argues that he had nothing to lose by filing a motion to suppress, *see* Rec. Doc. 122, p. 25-26, such argument does not support a finding of deficiency under *Strickland*. *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("This Court has never established anything akin to the Court of Appeals' 'nothing to lose' standard for evaluating *Strickland* claims."); *id.* at 121-22 n.3 ("Finding that counsel is deficient by abandoning a defense where there is nothing to gain from that abandonment is equivalent to finding that counsel is deficient by declining to pursue a strategy where there is nothing to lose from pursuit of that strategy."); *Mejia v. Davis*, 906 F.3d 307, 318 n.4 (5th Cir. 2018) ("[T]o the extent the district court mistakenly relied on a theory that Luna was required to pursue manslaughter because he had 'nothing to lose,' the Supreme Court has disclaimed establishing such a standard

---

[6] If the four-level enhancement had applied, Scott's total offense level would have increased from 21 to 25, and his advisory guidelines imprisonment range would have increased from 57 to 71 months to 84 to 105 months. *See* Rec. Doc. 65, p. 18 (finding total offense level of 21 and advisory guidelines imprisonment range of 57 to 71 months without four-level enhancement).

10

for *Strickland* claims."). The Ninth Circuit has addressed the "nothing to lose" argument in the context of filing motions to suppress:

> Lowry's habeas petition can be well taken, for its deficient performance argument, only if based on the proposition that a defendant has everything to gain and nothing to lose in filing a motion to suppress. That proposition suggests that a lawyer should file a suppression motion in every case, because the defendant has nothing to lose and the lawyer can never be certain that the judge will not suppress the evidence against his client. We have rejected that argument where the motion would be without merit. We do so again now. A lawyer's zeal on behalf of his client does not require him to file a motion which he knows to be meritless on the facts and the law. Also, the premise that the defendant has nothing to lose by such a motion is false. The defendant stands to lose two things of value—a significant quantity of his lawyer's scarce time, and some of his lawyer's credibility with the judge. Lawyers are not called 'counsel' for nothing. The judge is counseled by the lawyers as to how he should proceed. The attentiveness with which the judge listens to the lawyers' advice is tempered by his judgment about the credibility of the particular lawyer. An unmeritorious motion to suppress may cost the particular defendant some deference by the judge to his lawyer's advice on other issues later in the case. It will certainly cost the particular defendant the time his lawyer wastes in the library and at his desk generating valueless paper, when he could be working on better motions, interviewing witnesses, examining locations and evidence, researching likely evidentiary issues, and preparing for trial.
>
> This is not to say that a motion to suppress may be lightly dispensed with. Few things can more greatly benefit a criminal defendant than keeping the most probative evidence against him from being seen by the jury. But in this case, the experienced defense lawyer knew from his research, and from the denial of suppression motions in other prisoners' criminal cases arising out of the rectum searches of other prisoners in this same disturbance, that the motion would lose. Lowry's lawyer did not render services that fell below the standard of reasonable professional judgment.

*Lowry*, 21 F.3d at 346.

The Ninth Circuit's reasoning applies with equal force here. Scott's counsel had many considerations she was dealing with all at once when she advised against the motion to suppress.

11

Based on her experience, her knowledge of the law, and her belief about what was best for her client, she focused her efforts on receiving the lowest sentence possible. *See* Tr. at 58-60. She also understandably believed that the *Terry* issue was not an open-and-shut case. *See* Tr. at 19-20, 31, 45. Based on the facts before the Court, and based on the demanding standard set forth in *Strickland*, Scott's § 2255 motion should be denied.

## CONCLUSION

For the foregoing reasons, and for the reasons in the government's previous filings, the government respectfully requests that the Court deny Scott's § 2255 motion.

Respectfully submitted,

PETER G. STRASSER
UNITED STATES ATTORNEY


*J. Ryan McLaren*
J. RYAN McLAREN
Assistant United States Attorney
U.S. Attorney's Office (E.D. La.)
650 Poydras Street, Suite 1600
New Orleans, Louisiana 70130
Telephone: (504) 680-3037
E-Mail: ryan.mclaren@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 19th day of February, 2020, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to ECF-registered counsel of record

                                       *J. Ryan McLaren*
                                       J. RYAN McLAREN
                                       Assistant United States Attorney