# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA          CRIMINAL ACTION

VERSUS                               No. 17-23

SONNY SCOTT                          SECTION I

## ORDER & REASONS

Petitioner Sonny Scott has moved[1] to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The Court previously reviewed Scott's claims for habeas relief and determined that an evidentiary hearing would be necessary to develop the record with respect to Scott's Sixth Amendment claim of ineffective assistance of counsel, which implicates a Fourth Amendment claim of an unlawful search and seizure.[2] An evidentiary hearing was held on February 4, 2020 to resolve these issues. For the following reasons, the motion is denied.

## I.

On April 6, 2017, Scott pled guilty to a one-count superseding bill of information that charged him with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).[3] There was no plea agreement.

---

[1] R. Doc. Nos. 73, 80, & 99.

[2] *See* R. Doc. No. 88.

[3] R. Doc. No. 27, at 1; R. Doc. No. 26. The government explained that it filed a superseding bill of information "to fix a typographical error in the indictment"; the indictment failed to allege a violation of 18 U.S.C. § 924(a)(2), and the notice of forfeiture in the indictment incorrectly cited 18 U.S.C. §§ 924(c)(1) and 924(c)(1)(A). R. Doc. No. 121, at 8; *see* R. Doc. Nos. 11 & 26.

According to the government's factual basis, Drug Enforcement Administration ("DEA") agents were conducting surveillance of suspected drug distributors on and around Bullard Avenue in New Orleans—an area that they knew from prior experience to be a common location for drug trafficking—when they observed Scott at 10:15 P.M. meet with another individual in the rear parking lot of the Stay Express Inn located at 12340 South I-10 Service Road.[4] Thereafter, the agents observed Scott quickly leave the parking lot on a motorcycle.[5] Shortly following this encounter, the agents located Scott at the drive-thru of a nearby Taco Bell and approached him to conduct an investigatory stop and protective search.[6] From a search of his person, the agents found approximately $250.00 in United States currency, three grams of heroin, approximately three grams of cocaine, numerous unidentified pills individually wrapped in clear plastic bags, and a loaded .38 caliber special Smith & Wesson firearm bearing serial number 44251.[7] The factual basis also states that Scott has prior felony convictions and that he is therefore prohibited from possessing a firearm.[8]

Scott has three prior felony convictions in Orleans Parish, and he has served sentences of imprisonment for each one. On September 4, 1998, Scott pled guilty to possession with intent to distribute a counterfeit controlled substance, and he was

---

[4] R. Doc. No. 29, at 1.
[5] *Id.*
[6] *Id.*
[7] *Id.* at 1–2.
[8] *Id.* at 2.

sentenced to two years of imprisonment.[9] On October 22, 2002, Scott pled guilty to armed robbery and theft of goods, and he was sentenced to ten years of imprisonment for the armed robbery conviction and two years of imprisonment for the theft conviction, all to run concurrently.[10] And on November 8, 2010, Scott pled guilty to attempted possession of a firearm by a felon, and he was sentenced to five years of imprisonment.[11]

At Scott's rearraignment before this Court on April 6, 2017, Scott entered a guilty plea and admitted to the facts set forth in the factual basis.[12] The Court explained to Scott the elements of the offense under 18 U.S.C. § 922(g) as follows:

> First, that the defendant knowingly possessed the firearm as charged;
>
> Second, that before the defendant possessed the firearm, the defendant had been convicted in a court of a crime punishable by imprisonment for a term in excess of one year, that is, a felony offense; and
>
> Third, that the firearm the defendant possessed traveled in or affected interstate commerce; that is, that before the defendant possessed the firearm, it had traveled at some time from one state to another.[13]

---

[9] R. Doc. No. 36, at 7. The docket number for this conviction in Orleans Parish Criminal District Court is No. 400-993 "L." *Id.*; R. Doc. No. 26, at 1. Scott's sentence of imprisonment was suspended and he was placed on two years of probation. R. Doc. No. 36, at 7. On August 30, 2001, Scott's probation was revoked, and his original two-year sentence of imprisonment was executed. *Id.* at 7–8.

[10] *Id.* at 8. The docket number for this conviction in Orleans Parish Criminal District Court is No. 425-376 "D." *Id.*; R. Doc. No. 26, at 1. Scott was released to parole on September 9, 2010, but his parole was revoked approximately one year later. R. Doc. No. 36, at 8. Scott was then re-released on parole on October 10, 2012. *Id.*

[11] *Id.* The docket number for this conviction in the Orleans Parish Criminal District Court is No. 500-926. *Id.* Scott was released to parole on October 10, 2012. *Id.*

[12] *See* R. Doc. No. 60, at 21–22.

[13] *Id.* at 9.

Scott affirmed his understanding of the charge against him and the elements of the offense.[14] Finding that Scott's plea was knowledgeable, voluntary, and had a basis in fact that contained all the elements of the crime charged in the superseding bill of information, the Court accepted Scott's plea and adjudged him guilty with respect to count one of the superseding bill of information.[15]

Following Scott's guilty plea, this Court sentenced Scott to a term of imprisonment of one hundred months.[16] On July 13, 2017, Scott appealed his sentence, challenging both this Court's decision to depart upward from his advisory guideline range and the extent of the departure.[17] The United States Court of Appeals for the Fifth Circuit affirmed this Court's judgment,[18] and on November 5, 2018, the United States Supreme Court denied Scott's petition for a writ of certiorari.[19] Thereafter, on April 8, 2019, Scott filed a § 2255 petition to vacate, set aside, or correct his sentence.[20]

In his initial and first amended § 2255 petitions,[21] which he filed *pro se*, Scott presented two grounds for relief. First, Scott asserted that his trial counsel provided ineffective assistance when she failed to "fully investigate the Fourth Amendment issue" and failed to challenge an allegedly unlawful search and seizure, failed to

---

[14] *Id.* at 10.
[15] *Id.* at 23.
[16] R. Doc. No. 50, at 2.
[17] *See* R. Doc. No. 51, at 1; R. Doc. No. 71, at 3.
[18] R. Doc. No. 71, at 2.
[19] R. Doc. No. 72.
[20] R. Doc. No. 73.
[21] R. Doc. Nos. 73 & 80.

negotiate a favorable plea, failed to adequately explain and allow him time to review his guilty plea, failed to file an appeal at his request.[22] Scott further alleged that his trial counsel persuaded him to plead guilty with a promise that he would receive a different sentence than the sentence this Court imposed.[23] Second, Scott argued that the law enforcement officers who arrested him subjected him to an unlawful search in violation of his Fourth Amendment rights.[24]

The Court reviewed Scott's initial and amended § 2255 petitions,[25] the government's responses, the record, and the applicable law, and determined that an evidentiary hearing would be necessary with respect to one of Scott's ineffective assistance claims—i.e. his trial counsel's failure to file a motion to suppress evidence that DEA agents obtained as a result of the search of his person on the night of his arrest.[26] With respect to this claim, Scott asserts that he had asked his trial counsel to "challenge the unlawful search and seizure in [his] case," and that his counsel's failure to do so "induced an unknowing and involuntary plea" based on "evidence that

---

[22] *See id.*

[23] *See* R. Doc. No. 73, at 4–12; R. Doc. No. 80, at 1–2.

[24] R. Doc. No. 73, at 13–19. Scott's Fourth Amendment claim may not be raised on collateral review as a stand-alone basis for habeas relief. *United States v. Cavitt*, 550 F.3d 430, 435 (5th Cir. 2008). However, because the "viability of the Fourth Amendment claim is inextricably intertwined with [Scott]'s claim that his counsel rendered ineffective assistance in respect to failing to pursue a motion to suppress and in failing to advise him properly regarding the viability of such claim in connection with pleading guilty," the Court must examine Scott's putative Fourth Amendment claim. *Id.* (citation and internal quotation marks omitted); *see Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (explaining that a habeas petitioner's "defaulted Fourth Amendment claim is one element of proof of his Sixth Amendment claim").

[25] R. Doc. Nos. 73 & 80.

[26] R. Doc. No. 88, at 16.

should have been suppressed."[27] The Court concluded that Scott's other claims alleging ineffective assistance of trial counsel were meritless.[28]

The Court ordered that counsel be appointed to represent Scott in connection with the evidentiary hearing, and habeas counsel was enrolled on behalf of Scott on June 3, 2019.[29]

While Scott and the government prepared for the evidentiary hearing, the Supreme Court issued its opinion in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), which clarified the *mens rea* requirement for a conviction under 18 U.S.C. §§ 922(g) and 924(a)(2). In *Rehaif*, the Supreme Court explained that to convict a defendant under 18 U.S.C. §§ 922(g) and 924(a)(2), the government must prove both that the defendant knew he possessed a firearm and also that he knew of his status as a person barred from possessing a firearm when he possessed it. *Id.* at 2194. Prior to *Rehaif*, neither the Supreme Court nor the Fifth Circuit had held that the government was required to prove that the defendant knew of his prohibited status when he possessed the firearm. *See id.* at 2210–11 (Alito, J., dissenting) ("[A]ll the courts of appeals to address the question have held that [the *mens rea* requirement] does not apply to the defendant's status."); *United States v. Rose*, 587 F.3d 695, 705–06, n.9 (5th Cir. 2009).

Based on the Supreme Court's decision in *Rehaif*, Scott supplemented his § 2255 petition with two additional claims: that his conviction was constitutionally invalid and that the Court lacked jurisdiction to enter the judgment and sentence

---

[27] R. Doc. No. 80, at 2.
[28] *See* R. Doc. No. 88, at 6–16, 25.
[29] *See id.*; R. Doc. No. 92.

against him.[30] The government did not oppose Scott's request to amend and supplement his § 2255 petition based on *Rehaif*, but it argues that such claims do not warrant postconviction relief because they are procedurally defaulted and the alleged constitutional errors are not structural errors that warrant automatic reversal of Scott's conviction.[31]

## II.

Section 2255 is designed to remedy constitutional errors and other injuries a defendant could not have raised on direct appeal that would result in a miscarriage of justice if left unaddressed. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). Relief may be granted under § 2255 to a defendant in federal custody if the defendant's sentence "was imposed in violation of the Constitution or laws of the United States, . . . the court was without jurisdiction to impose such sentence, . . . the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

---

[30] R. Doc. No. 99.

[31] *See* R. Doc. No. 102. The Supreme Court has adopted the general rule that a constitutional error does not require reversal of a conviction if the government can show beyond a reasonable doubt that the error was harmless. *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017) (citing *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991)); *see United States v. Jones*, 935 F.3d 266, 270 (5th Cir. 2019). However, "certain errors are deemed structural and require reversal because they cause fundamental unfairness, either to the defendant in the specific case or by pervasive undermining of the systemic requirements of a fair and open judicial process." *Weaver*, 137 S. Ct. at 1911. "[T]he defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Id.* (quoting *Fulminante*, 499 U.S. at 310).

Review of a conviction under § 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude. *United States v. Scruggs*, 691 F.3d 660, 666 (5th Cir. 2012). Habeas review is an extraordinary remedy that will not do service for a direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998). A defendant is barred from raising constitutional claims for the first time on collateral review unless he demonstrates (1) cause for failing to raise the issue on direct appeal and (2) actual prejudice resulting from the error.[32] *Allen*, 918 F.3d at 460.

An ineffective assistance of counsel claim, however, "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Such a claim can satisfy the cause and prejudice standard to overcome procedural default in a § 2255 petition. *United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).

In this case, Scott's Fourth Amendment claim "is procedurally barred unless he first succeeds on his Sixth Amendment claim." *United States v. Alanis*, 88 F. App'x 15, 22 (5th Cir. 2004). If Scott "succeeds on his Sixth Amendment claim, he will have established the validity of his Fourth Amendment claim because the merits of his Fourth Amendment claim are an element of his ineffective-assistance-of-trial-counsel claim." *Id.*; *see Kimmelman*, 477 U.S. at 375. Accordingly, the Court will examine

---

[32] A defendant may also raise a claim in habeas that was procedurally defaulted by demonstrating that he is "actually innocent" of his conviction. *Bousley*, 523 U.S. at 622 (citing *Murray v. Carrier*, 477 U.S. 478, 485 (1986)). However, Scott has not argued actual innocence with respect to his conviction. Instead, he asserts that he "need not show actual innocence" because he has demonstrated cause and prejudice. R. Doc. No. 105, at 6–7 n.3.

whether Scott has succeeded on his Sixth Amendment claim under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), and review Scott's Fourth Amendment claim of an unlawful search and seizure as an element of his Sixth Amendment claim.

## A. Ineffective Assistance of Counsel

Scott argues that his trial counsel provided ineffective assistance because she failed to challenge the allegedly unconstitutional investigatory stop and protective search of his person on the night of his arrest and failed to move to suppress unlawfully obtained evidence, which ultimately resulted in his guilty plea. Specifically, Scott contends that his trial counsel's failure to file a motion to suppress fell below an objective standard of reasonableness.[33] The government asserts, in response, that Scott's trial counsel made a strategic choice and she did not render deficient performance when she decided against filing a suppression motion.[34]

A claim of ineffective assistance of counsel based on a failure to file a motion to suppress is governed by the two-pronged *Strickland* test. *See Premo v. Moore*, 562 U.S. 115, 123 (2011); *United States v. Dowling*, 458 F. App'x 396, 397 (5th Cir. 2012). To succeed on this claim, Scott must demonstrate that (1) his trial counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that prejudice resulted. *Allen*, 918 F.3d at 460–61.

---

[33] *See* R. Doc. No. 107, at 10.
[34] *See* R. Doc. No. 110, at 2; R. Doc. No. 121, at 4.

With respect to the first prong of the *Strickland* inquiry, Scott must identify an "act or omission" of his trial counsel that "was not the result of reasonable professional judgment." *Dowling*, 458 F. App'x at 398. The court must then determine "whether 'the identified acts or omissions were outside the wide range of professionally competent assistance' considering all of the circumstances at the time of trial counsel's conduct." *Id.* (quoting *Strickland*, 466 U.S. at 687). "[T]he defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Allen*, 918 F.3d at 461 (quoting *Strickland*, 466 U.S. at 689). The defendant bears the burden to show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Because Scott's ineffective assistance claim centers on his trial counsel's failure to raise a Fourth Amendment claim, in order to satisfy the second prong of the *Strickland* test—actual prejudice—Scott "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the [outcome of his case] would have been different absent the excludable evidence." *Dowling*, 458 F. App'x at 398 (quoting *Kimmelman*, 477 U.S. at 375). A reasonable probability is "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

To determine whether Scott's trial counsel provided ineffective assistance, the Court will first review the merits of Scott's Fourth Amendment claim and the likelihood that a suppression motion, had it been filed, would have succeeded. The

Court will then examine whether the decision by Scott's trial counsel not to file a motion to suppress constitutes deficient performance under the *Strickland* standard.

### i. Prejudice – Merits of Scott's Fourth Amendment Claim

Under the Fourth Amendment of the United States Constitution, warrantless searches and seizures are "per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions." *United States v. Darrell*, 945 F.3d 929, 932 (5th Cir. 2019). "The rule of *Terry v. Ohio*, 392 U.S. 1 (1968), represents 'a very narrow exception.'" *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (quoting *United States v. Tookes*, 633 F.2d 712, 715 (5th Cir. 1980)). Pursuant to *Terry*, a law enforcement officer may briefly detain an individual to investigate if he has "reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *Darrell*, 945 F.3d at 939 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "[I]f the officer reasonably believes that the individual is 'armed and presently dangerous to the officer[ ] or to others, [he] may conduct a limited protective search for concealed weapons'—often called a 'frisk.'" *Id.* (quoting *United States v. Rideau*, 969 F.2d 1572, 1574 (5th Cir. 1992) (en banc) (alterations in original); *see Terry*, 392 U.S. at 24).

Courts employ a two-part test to determine the legality of a *Terry* stop. *Id.* Courts first "examine whether the officer's action was justified at its inception, and then inquire into whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Id.* (quoting *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004)).

To justify an initial stop, the officer must have "reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Sokolow*, 490 U.S. at 7). "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 417 (1981). The reasonable suspicion determination requires the court to examine the totality of the circumstances "to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Arvizu*, 534 U.S. at 273. The officer must be able to point to "specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or is about to commit, a crime." *Hill*, 752 F.3d at 1033. The government bears the burden of proving the specific and articulable facts that support the reasonableness of the suspicion. *Id.*

"An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000). Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them," *Brigham*, 382 F.3d at 507 (quoting *Arvizu*, 534 U.S. at 273), and they may review "relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." *Wardlow*, 528 U.S. at 124. However, while the fact that a defendant's conduct occurred in an area of high crime activity may be considered as a pertinent contextual factor in the *Terry* analysis, the

government "cannot . . . justify a warrantless search or seizure with nothing more than incantations about the proverbial 'high-crime area.'" *Hill*, 752 F.3d at 1035 (citation and internal quotation marks omitted). A location's "reputation for drugs, ... 'standing alone, is not enough' to support a reasonable suspicion that anybody found there is involved with drugs." *Id.* (quoting *Wardlow*, 528 U.S. at 124).

After an officer conducts a legitimate stop based on reasonable suspicion, he may conduct a "reasonable search for weapons" for the officer's protection and safety. *Terry*, 392 U.S. at 27. To proceed from an investigatory stop to a patdown for weapons, i.e. a frisk, an officer must "reasonably suspect that the person stopped is armed and dangerous." *Arizona v. Johnson*, 555 U.S. 323, 327–28 (2009); *Terry*, 392 U.S. at 27. In determining whether the officer acted reasonably under the circumstances, the court must give "due weight . . . to the specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." *Terry*, 392 U.S. at 27.

The government delineated several "articulable facts" supporting the agents' reasonable suspicion that the investigatory stop and protective search of Scott were justified.[35] On the night of Scott's arrest, DEA agents had planned to conduct a buy-bust operation on a target who, agents learned, "frequent[ed] and ma[de] narcotics transactions in and around the Stay Express Inn . . . ," which is located in an area that agents knew to be a "high crime and high drug trafficking area."[36] The agents

---

[35] R. Doc. No. 86, at 6.
[36] R. Doc. No. 86-1, at 3.

also had information that the target drove a black Audi SUV.[37] After agents established surveillance in the Stay Express Inn parking lot, they saw a black Audi—the target's suspected vehicle—in the rear parking lot around 10:15 P.M.[38] "[C]ritically," according to the government, agents saw Scott meet with another individual in the parking lot while the black Audi was also in the lot.[39] Based on these circumstances, the government asserts, the agents "made the reasonable inference that Scott was engaged in criminal drug activity" and "acted properly in handcuffing Scott to ensure their own safety."[40]

The factual basis states that DEA agents observed Scott "meet with another individual and quickly depart the rear parking lot of the Stay Express Inn."[41] The DEA report detailing the conduct at issue only states, however, that the agents "observed Scott meet with an individual and conduct, what experienced law enforcement officers *believed to be*, a 'hand to hand' narcotics transaction."[42]

The government acknowledges that, at a suppression hearing, an agent would testify that he did not actually see drugs change hands and that his view was partially

---

[37] *Id.*
[38] *Id.* at 4.
[39] R. Doc. No. 86, at 6. According to the DEA Report of Investigation ("DEA report"), agents saw Scott arrive in the parking lot around 10:30 P.M., meet with an individual, and conduct what they believed to be a hand-to-hand narcotics transaction. R. Doc. No. 86-1, at 4. At 10:44 P.M., an agent observed the target enter the black Audi and depart the location. *Id.* "[J]ust moments later," an agent observed Scott also leave the location. *Id.*
[40] R. Doc. No. 86, at 6, 7.
[41] R. Doc. No. 29, at 1.
[42] R. Doc. No. 86-1, at 4 (emphasis added).

obstructed.[43] The government also confirmed at the evidentiary hearing that no agent saw hand-to-hand contact of any kind between Scott and the other individual on the night of Scott's arrest.[44] Notwithstanding, according to the government, the agent would testify that he "nevertheless believed" that Scott engaged in a hand-to-hand drug transaction "based on what he witnessed and based on his experience."

Considering the totality of the circumstances based on the existing record, it appears that DEA agents were not justified in their stop and search of Scott on the night of his arrest, as the evidence presented does not appear to support reasonable suspicion. The Court finds that a motion to suppress, had it been filed, may have been meritorious, and therefore, a reasonable probability exists that the outcome of Scott's case would have been different absent the excludable evidence, as "[e]vidence obtained by the government in violation of a defendant's Fourth Amendment rights may not be used to prove the defendant's guilt at trial." *Cavitt*, 550 F.3d at 435 (quoting *United States v. Thomas*, 12 F.3d 1350, 1366 (5th Cir. 1994)).

Because a motion to suppress would likely have been meritorious and there is a reasonable probability that the outcome of Scott's case would, thereby, have been different, Scott has likely satisfied the prejudice element of the *Strickland* analysis. However, the Court need not determine whether Scott has satisfied the *Strickland* prejudice prong because, for the reasons discussed herein, he has failed to show that

---

[43] R. Doc. No. 86, at 2.
[44] *See* R. Doc. No. 120, at 45–48.

his trial counsel rendered deficient performance in deciding not to file a motion to suppress.

### ii. Deficient Performance of Trial Counsel

To prevail on his Sixth Amendment claim, Scott must also demonstrate that his trial counsel's decision against filing a motion to suppress constituted deficient performance under the second *Strickland* prong. *See Dowling*, 458 F. App'x at 400. In determining whether the performance of Scott's trial counsel was deficient with respect to this decision, the court must examine whether the decision was objectively reasonable. *Cavitt*, 550 F.3d at 440. "[T]he failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." *Kimmelman*, 477 U.S. at 385. The court must examine whether the decision not to file a motion to suppress "could be construed as 'sound trial strategy.' If [the court] conclude[s] that the decision was strategic, conscious, and informed, then [the court] should ask whether it rendered the proceedings obviously unfair." *Cavitt*, 550 F.3d at 440; *see United States v. Beamer*, 8 F.3d 20 (5th Cir. 1993) ("[T]he filing of pre-trial motions 'falls squarely within the ambit of trial strategy.'") (quoting *Schwander v. Blackburn*, 750 F.2d 494, 500 (5th Cir. 1985)).[45]

---

[45] Scott and the government agree that defense counsel are not required under law to file a suppression motion at their client's request. *See* R. Doc. No. 121, at 2–3; R. Doc. No. 122, at 10. While counsel have "a duty to consult with the client regarding 'important decisions,' including questions of overarching defense strategy," that obligation "does not require counsel to obtain the defendant's consent to 'every tactical decision.'" *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (citations omitted). Decisions that trial counsel may make without their client's consent include those that "'primarily involve trial strategy and tactics, such as . . . what pre-trial motions should be filed.'" *Sexton v. French*, 163 F.3d 874, 885 (4th Cir. 1998) (quoting *United*

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." *Jones*, 287 F.3d 325, 331 (5th Cir.) *cert. denied*, 537 U.S. 1018 (2002)) (quoting *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir.), *cert. denied*, 528 U.S. 1013 (1999)). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of **hindsight**, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 668 (emphasis added). "'A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'" *Martinez v. Dretke*, 404 F.3d 878, 885 (5th Cir. 2005) (quoting *Jones*, 287 F.3d at 331).

Scott's trial counsel explained that she did not file a motion to suppress, notwithstanding Scott's request that she do so, because she did not believe that a suppression motion would have been successful.[46] At the evidentiary hearing, Scott's trial counsel stated that she reviewed the discovery provided by the government, which included the DEA report and post-arrest photographs of the gun and drugs found on Scott, and concluded that the evidence supported a finding of reasonable

---

States v. Teague*, 953 F.2d 1525, 1531 (11th Cir. 1992)). Counsel's decision as to whether to raise a suppression issue may be a strategic one, as counsel are "not automatically required to file a suppression motion in every case involving evidence or statements obtained after a search." *United States v. Chavez-Valencia*, 116 F.3d 127, 134 (5th Cir. 1997). The decision not to file a suppression motion may constitute a "reasonable trial strategy." *Evans v. Davis*, 875 F.3d 210, 218 (5th Cir. 2017).

[46] R. Doc. No. 107-1, at 2; R. Doc. No. 120, at 9.

suspicion to justify the stop and frisk of Scott.[47] Scott's trial counsel also testified that she considered the "totality of the circumstances," including the fact that the agents were surveilling a "hot bed" of criminal activity, and the close proximity of Scott to the target's suspected vehicle when agents observed what they believed to be a hand-to-hand transaction.[48] Drawing on her professional experience, she concluded that Scott would not have prevailed on a motion to suppress given these circumstances.[49]

---

[47] *See* R. Doc. No. 120, at 8, 51.

[48] R. Doc. No. 120, at 20, 31. In a colloquy with the Court during the evidentiary hearing, Scott's trial counsel confirmed that she considered the totality of the circumstances when evaluating whether to file a motion to suppress.

| | |
|---|---|
| Court: | You do agree that, when you look at the motion to suppress, you have to look to the totality of the circumstances, right? |
| Counsel: | That's correct. |
| Court: | Okay. Did you at all consider the fact that this was— according to the agent's testimony, it would be a relatively high crime area and this issue with respect to the Audi? |
| Counsel: | Yes. |
| Court: | And the geographical proximity? |
| Counsel: | Correct. That was definitely a factor. Yeah. |

*Id.* at 31. References herein to "Counsel" refer to Scott's trial counsel. Scott is currently represented by habeas counsel, who also participated in the evidentiary hearing.

[49] *See id.* at 9. At the time of her representation of Scott, Scott's trial counsel had approximately ten years of experience in criminal defense in both federal and Louisiana state courts. *Id.* at 25. She testified at the evidentiary hearing that she had experience filing motions to suppress in nearly every jurisdiction where she practices, and that she generally does not file a suppression motion until she reviews discovery to "see if it's warranted." *Id.* at 27. In her experience, motions to suppress have rarely succeeded. *See id.* at 29. Notwithstanding, she affirmed to the Court that she has an

Scott's trial counsel also considered the potential negative consequences for Scott if a suppression hearing was held. Notably, she appeared concerned that at a suppression hearing, agents would testify that they did, in fact, observe Scott engage in a hand-to-hand transaction in the parking lot on the night of his arrest.[50] Scott's trial counsel also considered the possibility that agents could testify to "additional information of [Scott] actually doing a hand-to-hand or . . . gotten even more in detail of [Scott] being part of sales."[51] Noting that the government only charged Scott with being a felon in possession of a firearm, despite the fact that agents found cash and multiple clear plastic bags of drugs on his person, Scott's trial counsel explained that "it would not have been good for him if we would have lost the suppression hearing" and "the facts came out that he had narcotics on his person" because the government could have then also charged Scott with drug offenses.[52]

---

obligation to file a motion to suppress when such a motion appears to be warranted by the underlying facts. *See id.* at 28.

[50] *Id.* at 20. Although the government later explained, after Scott moved to vacate his conviction pursuant to § 2255, that an agent would testify that he only saw what he believed to be a hand-to-hand transaction, and that no hand-to-hand contact was actually observed, Scott's trial counsel did not have the benefit of such hindsight at the time of her representation of Scott. *See Premo*, 562 U.S. at 132 ("[H]indsight cannot suffice for relief when counsel's choices were reasonable and legitimate based on predictions of how the trial would proceed.").

[51] *Id.* at 41.

[52] *Id.* at 15, 18. The Court inquired into this concern at the evidentiary hearing:

> Court:    I'm trying to understand what was in your head at the time. With respect to this concern about there being in front of the Court there was a hand-to-hand transaction. Was your concern that the Court would take that fact into consideration the fact that he was either a drug dealer or drug user? Of course, evaluated and combine[d] with all the things that were found on his person. Or were you

Because Scott's trial counsel "did not believe the case should go to trial based on the evidence seized from Mr. Scott," she focused instead on "negotiating the details of the factual basis and facilitating possible cooperation."[53] A strong consideration was the possibility that Scott could receive a harsher sentence if evidence of a hand-to-hand transaction was in the record.[54] For that reason, Scott's trial counsel worked with the Assistant United States Attorney to not include in the factual basis any language referencing a hand-to-hand transaction.[55] She was successful in this effort, as the factual basis does not contain any such references.[56] In addition, although Scott had initially asked his trial counsel to file a suppression motion, he "backed off" this request after she presented and discussed the factual basis with him.[57] Thereafter, Scott informed his trial counsel that he intended to plead guilty.[58]

---

<div style="margin-left:2em">

|  |  |
|---|---|
|  | concerned about the fact that the government might charge him also with dealing drugs? |
| Counsel: | Both. Probably both, yeah, because, like I said, there's no reason for them not to charge him at that point . . . |

</div>

*Id.* at 17.

With respect to her concern that a suppression hearing would have elicited additional details regarding Scott's alleged participation in a drug transaction, Scott's trial counsel explained: "You know, that's one thing I was definitely trying to help, you know, not come out because he already had the gun charge and he wasn't charged with any kind of distribution. You know, it definitely could have affected his sentencing." *Id.* at 41.

[53] R. Doc. No. 107-1, at 2.

[54] *See* R. Doc. No. 120, at 41, 43, 44.

[55] *Id.* at 44.

[56] *See* R. Doc. No. 29.

[57] R. Doc. No. 120, at 33.

[58] *Id.* at 21, 22, 33.

Scott's trial counsel also explained her concern that a motion to suppress would have undermined efforts to facilitate cooperation with the government and obtain a more favorable sentence for Scott. Considering Scott's willingness to plead guilty, his trial counsel arranged a debriefing with the government to negotiate a possible cooperation agreement, including a motion by the government for a downward departure at sentencing pursuant to U.S.S.G. § 5K1.1.[59] Scott's trial counsel believed that a suppression motion would have placed Scott in a "trial posture," which would have been incongruous with the intent to cooperate.[60] Although she did not specifically discuss the suppression issue with the Assistant United States Attorney, she did engage in discussions with the government regarding the factual basis and potential cooperation.[61]

Scott argues that his trial counsel rendered objectively unreasonable performance because of her "misapprehension" of the law with respect to investigatory stops and protective searches pursuant to the Fourth Amendment.[62] According to Scott, his trial counsel's conclusion that the information in the DEA report supported a finding of reasonable suspicion for the stop and frisk was objectively unreasonable. However, as she explained in great length at the evidentiary hearing, Scott's trial counsel evaluated the totality of the circumstances—including the fact that agents were surveilling a high-crime area,

---

[59] *See id.* at 14, 37, 39.
[60] *Id.* at 39, 40. At the debriefing, however, Scott was not willing to provide information to the agents, and no cooperation agreement was reached. *See id.* at 40.
[61] *See id.* at 13–14.
[62] *See* R. Doc. No. 107, at 10; R. Doc. No. 122, at 12, 16.

that Scott was observed in close proximity to the target's suspected vehicle, and that agents saw Scott engage in what they believed to be a narcotics transaction—when deciding against filing a suppression motion.[63]

Although Scott contends that his trial counsel "overlooked the applicable 'armed and dangerous' inquiry," he has not presented sufficient facts to support this argument.[64] "[A] connection with drug transactions can support a reasonable suspicion that a suspect is armed and dangerous." *United States v. Garcia*, 459 F.3d 1059, 1064 (10th Cir. 2006); *see United States v. Bullock*, 510 F.3d 342, 346 (D.C. Cir. 2007) (explaining that an officer's reasonable suspicion that a suspect committed a "serious crime—such as . . . various drug offenses" may lead the officer to "reasonably conclude the suspect 'may be armed and presently dangerous'") (quoting *Terry*, 392 U.S. at 30). Officers who stop a person who is "'reasonably suspected of carrying drugs' are 'entitled to rely on their experience and training in concluding that weapons are frequently used in drug transactions,' and to take reasonable measures to protect themselves." *United States v. Jacob*, 377 F.3d 573, 579 (6th Cir. 2004) (quoting *United States v. Heath*, 259 F.3d 522, 529 (6th Cir. 2001)). Numerous courts have concluded that an individual's suspected involvement in drug transactions can

---

[63] As stated previously, while the government later proffered that no hand-to-hand transaction was observed, this information was not available to Scott's trial counsel at the time she evaluated the suppression issue. As previously discussed, the Court is mindful that when examining counsel's performance, it must make "every effort … to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 668.

[64] R. Doc. No. 124, at 7.

support reasonable suspicion to conduct a patdown of the individual for weapons. *See Bullock*, 510 F.3d at 347 (collecting cases); *Garcia*, 459 F.3d at 1064–66 (collecting cases). The reasoning that Scott's trial counsel provided regarding the suppression issue does not evince "ignorance of a point of law" that would constitute deficient performance. *See Hinton v. Alabama*, 571 U.S. 263, 274 (2014).

Scott also contends that his trial counsel rendered deficient performance because she failed to reasonably investigate the circumstances surrounding the stop and search of his person.[65] According to Scott, his trial counsel allegedly "made no effort to seek out additional information" regarding a "factual dispute" between the agents' alleged belief that a hand-to-hand transaction occurred and Scott's denial that any such transaction took place.[66] At the evidentiary hearing, Scott's trial counsel

---

[65] *See* R. Doc. No. 122, at 20.
[66] *Id.* at 21.

The government argues that under Federal Rule of Civil Procedure 15, Scott may not raise his failure to investigate claim at this stage of the proceedings because it is allegedly a new, distinct claim that does not relate back to the original § 2255 pleadings that Scott filed *pro se*. *See* R. Doc. No. 123, at 4–5. According to the government, the failure to investigate claim that Scott presents through his habeas counsel raises a new ground for relief from the claims Scott presented in his *pro se* § 2255 petitions. *See id.* Therefore, according to the government, the failure to investigate claim is time-barred under a one-year limitations period pursuant to § 2255(f)(1). *See id.*

While the Court is not convinced that the failure to investigate claim constitutes a new claim distinct from the ineffective assistance of counsel claim, even if it were, it may be properly considered as an amendment that relates back to Scott's *pro se* § 2255 pleadings. Habeas petitioners may amend their pleadings pursuant to Federal Rule of Civil Procedure 15. *United States v. Saenz*, 282 F.3d 354, 355–56 (5th Cir. 2002). The court has discretion to grant leave to amend, keeping in mind that "leave to amend is to be granted liberally." *United States v. Trevino*, 554 F. App'x 289, 293

acknowledged that she did not request additional discovery from the government other than what she initially received, which included the DEA report and post-arrest photographs, or pursue further inquiry into the circumstances surrounding the stop.[67] While Scott argues that his trial counsel could have sought materials such as body camera footage from the agents or security footage from the Stay Express Inn,[68] testimony from the evidentiary hearing indicates that no additional information

---

(5th Cir. 2014) (citing *Jebaco, Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 322 (5th Cir. 2009)).

In the habeas context, a proposed amendment relates back to the date of the original pleading if a "common 'core of operative facts' unit[es] the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 659 (2005). However, if the new claim asserts "a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth," then the proposed amendment does not relate back to the original pleading and is time-barred. *United States v. Gonzalez*, 592 F.3d 675, 680 (5th Cir. 2009) (citing *Mayle*, 545 U.S. at 650).

The claim that Scott's trial counsel failed to investigate the suppression issue arises from the same common core of operative facts at the center of Scott's ineffective assistance of counsel claim. It does not, as the government contends, involve "an entirely distinct type[ ] of attorney malfeasance." *See* R. Doc. No. 123, at 5. As Scott claimed in his amended *pro se* § 2255 petition, his trial counsel was ineffective because of her "failure to 'fully investigate the Fourth Amendment issue' and challenge the unlawful search and seizure." R. Doc. No. 80, at 1. The failure to investigate claim that Scott argues through his habeas counsel rests on inaction by his trial counsel of the same time and type that allegedly supports his ineffective assistance of counsel claim. *See* Fed. R. Civ. P. 15(c)(2) ("An amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence . . . set out in the original pleading."). Moreover, in its previous response to Scott's *pro se* § 2255 pleadings, the government addressed Scott's claim that "his counsel was ineffective in failing to conduct certain pretrial investigations." R. Doc. No. 83, at 7. The government's arguments as to the alleged procedural defects of this claim are unavailing.

[67] R. Doc. No. 120, at 55–56.
[68] *See* R. Doc. No. 122, at 21.

regarding the alleged hand-to-hand transaction was made known to his trial counsel at a proffer session with the government.[69]

A defendant who alleges a failure to investigate by his counsel "must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Adekeye v. Davis*, 938 F.3d 678, 683 (5th Cir. 2019). Here, Scott has not specified what further investigation would have revealed, suggesting instead that additional information "could potentially resolve" a dispute as to the hand-to-hand transaction.[70] This speculation is unavailing, particularly in light of the inference that the government did not have any additional information beyond that already provided to and reviewed by Scott's trial counsel. *See United States v. Green*, 882 F.2d 999, 1002 (5th Cir. 1989) (finding that the defendant failed to demonstrate deficient performance by his trial counsel because, inter alia, he "failed to suggest with specificity what exculpatory evidence could have been uncovered by a more thorough investigation by his counsel."). "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes

---

[69] As evinced at the evidentiary hearing:

| Scott's Habeas Counsel: | During that proffer session . . . [n]o information came out from the agents or from [the Assistant United States Attorney] suggesting that they did have additional information for [sic] DEA agents regarding that there was a hand-to-hand? |
|---|---|
| Counsel: | No, not to my knowledge. |

Doc. No. 120, at 56.
[70] R. Doc. No. 122, at 21.

particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The decision by Scott's trial counsel not to conduct further investigation appears to have been made in connection with the exercise of reasonable professional judgment. *See Cullen v. Pinholster*, 563 U.S. 170, 231 (2011).

Scott has also not demonstrated that his trial counsel's decisions rendered the proceedings obviously unfair, particularly considering her successful effort to exclude from the factual basis any mention of a hand-to-hand transaction by Scott. *See Martinez*, 404 F.3d at 885. And, as his trial counsel explained at the evidentiary hearing, Scott informed her of his willingness to plead guilty when she "went to see him with the factual basis."[71] This outcome was beneficial for Scott at sentencing, as the Court sustained his objection to including in his presentence report ("PSR") the agent's observation that Scott engaged in "what appeared to be a hand-to-hand narcotics transaction."[72] The Court found that this uncorroborated description by the agent was not sufficiently reliable for consideration at sentencing, particularly given the "absence of reliable evidence supporting that alleged hand-to-hand transaction."[73]

As previously stated, because of his trial counsel's strategic decisions, Scott's factual basis did not reference any hand-to-hand transaction, and, because of the absence of reliable evidence in support, the Court did not consider this alleged transaction at sentencing. "Informed strategic decisions of counsel are given a heavy measure of deference and should not be second guessed." *Lamb*, 179 F.3d at 358.

---

[71] R. Doc. No. 120, at 33.
[72] R. Doc. No. 36, at 5; R. Doc. No. 65, at 14.
[73] R. Doc. No. 65, at 14.

While counsel may pursue "a variety of trial techniques and tactics . . . [the Fifth Circuit] is careful not to second guess legitimate strategic choices." *United States v. McGrew*, 560 F. App'x 342, 347 (5th Cir. 2014) (quoting *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993)). Considering the heavy measure of deference that must be applied to the reasoned decisions of counsel, the Court finds that the decision by Scott's trial counsel not to file a motion to suppress was objectively reasonable. *See Jones*, 287 F.3d at 331. Scott has not surmounted *Strickland*'s high bar and demonstrated that his trial counsel rendered deficient performance.

## B. *Rehaif* Claims

Scott also asserts that the Court should vacate his conviction based on the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Scott argues that his conviction and sentence are constitutionally invalid in light of *Rehaif* and that the Court lacked subject matter jurisdiction to enter the judgment and sentence against him.[74]

According to Scott, because he was neither properly charged with nor informed of every essential element of a § 922(g) violation—specifically, that he knew he had the prohibited status when he possessed the firearm—or admit facts adequate to support a § 922(g) violation, he pled guilty to "a non-existent offense."[75] Consequently, his conviction violated his constitutional right to due process and notice of the true nature of the charge against him.[76] Scott also contends that these constitutional

---

[74] *See* R. Doc. Nos. 99 & 105.

[75] R. Doc. No. 99, at 8.

[76] *See id.* at 8.

errors are structural and, therefore, warrant automatic reversal of his conviction without regard to questions of prejudice or harmlessness analysis.[77] In addition, Scott argues that the indictment and bill of information against him failed to charge a criminal offense, thereby depriving this Court of subject matter jurisdiction to accept his guilty plea.[78] The government argues, in response, that Scott's *Rehaif* claim is procedurally defaulted and that the alleged constitutional errors with respect to Scott's conviction are not structural.[79]

i.     *Subject Matter Jurisdiction*

Scott asserts that the Court lacked subject matter jurisdiction and therefore could not accept Scott's guilty plea because the indictment and superseding bill of information did not allege every essential element of a § 922(g) offense—here, that Scott knew of his prohibited status when he possessed a firearm.[80] Because of this omission in the charging documents, the government allegedly failed to charge Scott "with *any* offense," thereby depriving the Court of jurisdiction over Scott's conviction.[81]

Pursuant to 18 U.S.C. § 3231, "[t]he district courts of the United States shall have original jurisdiction . . . of all offenses against the laws of the United States." A federal criminal case is within the subject matter jurisdiction of the district court if

---

[77] *See id.* at 9.

[78] *See id.* at 16.

[79] *See* R. Doc. No. 102.

[80] *See* R. Doc. No. 99, at 16.

[81] *Id.* at 17. Scott acknowledges that his jurisdictional argument "arguably stands contrary" to Fifth Circuit precedent. *Id.* However, he explained that that he has raised it to preserve the argument for further review. *Id.*

the defendant is "charged with an offense against the United States in language similar to that used by the relevant statute." *Scruggs*, 714 F.3d at 262. "Generally, an indictment that closely tracks the language under which it is brought is sufficient to give a defendant notice of the crimes with which he is charged." *United States v. Franco*, 632 F.3d 880, 884 (5th Cir. 2011); *see United States v. Isgar*, 739 F.3d 829, 838 (5th Cir. 2014). The court looks at the face of the charging document to assess subject matter jurisdiction. *United States v. Scruggs*, 691 F.3d 660, 668 (5th Cir. 2012).

"[D]efects in [the charging document] due to the failure to allege an element of the offense are not jurisdictional." *United States v. Jacquez-Beltran*, 326 F.3d 661, 662 (5th Cir. 2003); *United States v. Williams*, 341 U.S. 58, 66 (1951). Rather, a defendant's objection that the indictment or information "does not charge a crime against the United States goes only to the merits of the case." *United States v. Cotton*, 535 U.S. 625, 631 (2002).

Scott's argument that the Court lacked subject matter jurisdiction over his conviction is unavailing. The indictment and the superseding bill of information closely track the statutory language of § 922(g)(1) and contain sufficient factual detail to inform Scott of the charge against him.[82] *See United States v. Kay*, 359 F.3d 738, 758–59 (5th Cir. 2004). Therefore, any alleged defect in the omission of an element of the offense does not deprive the Court of subject matter jurisdiction.[83]

---

[82] *See* R. Doc. Nos. 11 & 26.

[83] In *United States v. Balde*, the Second Circuit closely examined and rejected the *Rehaif*-based jurisdictional claim that Scott asserts. 943 F.3d 73, 88–93 (2d Cir.

## ii.  Procedural Default

Scott did not raise his *Rehaif* claim on direct appeal, as the Supreme Court issued its *Rehaif* decision after Scott filed his § 2255 petition. Ordinarily, a defendant may not challenge the voluntariness and intelligence of a guilty plea unless he first challenged it on direct review. *Bousley*, 523 U.S. 614, 621 (1998). Where the defendant procedurally defaults a claim by failing to raise it on direct review, he may only bring

---

2019). Although the indictment in that case did not "expressly charge" that the defendant was aware of his prohibited status as an unlawful alien, it "closely track[ed] the language of the statute while including specific allegations as to the time, place and nature of [the defendant's] conduct" alleged to be a violation of § 922(g). *Id.* at 89. As the Second Circuit explained:

> Conduct that does not include actual knowledge of being in the United States unlawfully, the Supreme Court ruled [in *Rehaif*], is not sufficient to convict a defendant. The knowledge requirement therefore is best understood as telling us "what conduct [the statute] prohibits" and how the statute would be violated, which is ultimately a merits question and not one that affects the jurisdiction of the court to adjudicate the case. Therefore, an indictment that does not clearly indicate that the defendant is required to know he or she is in a prohibited category may be deficient in some way (and the government may avoid claims of such deficiencies by taking care to correctly state the requirement in future indictments), but its absence does not mean that the indictment fails to allege a federal offense in the sense that would speak to the district court's power to hear the case.

*Id.* at 90–91 (citations omitted).

The Eleventh Circuit also rejected the defendant's *Rehaif*-based jurisdictional claim in *United States v. Grace*, No. 18-13710, 2020 WL 257687, at *1 (11th Cir. Jan. 16, 2020). Although the indictment in that case "failed to allege that [the defendant] knew he was a felon prohibited from possessing firearms," that defect "did 'not affect the jurisdiction of the [district court] to determine the case presented by [his] indictment.'" *Id.* (quoting *Cotton*, 535 U.S. at 631).

that claim in a collateral attack by demonstrating cause for failing to raise the issue on direct appeal and actual prejudice resulting from the error. *Allen*, 918 F.3d at 460.

Claims of structural error are not exempt from the required showing of cause and prejudice to excuse a procedural default. *See Engle v. Isaac*, 456 U.S. 107, 128–29 (explaining, in relation to a procedurally defaulted claim brought in a habeas petition, "[w]hile the nature of a constitutional claim may affect the calculation of cause and actual prejudice, it does not alter the need to make that threshold showing").[84]

To satisfy the "cause" standard to excuse a procedural default, the defendant must show that "'some objective factor external to the defense' prevented him from raising on the direct appeal the claim he now advances." *United States v. Guerra*, 94 F.3d 989, 993 (5th Cir. 1996) (quoting *Romero v. Collins*, 961 F.2d 1181, 1183 (5th Cir. 1992)). One such objective factor is "a showing that the factual or legal basis for the claim was not reasonably available to counsel at the prior occasion." *Id.* However,

---

[84] Several courts have found that the procedural default doctrine applies to claims of structural error raised in habeas petitions. *See McCoy v. United States*, 815 F.3d 292, 294 (7th Cir. 2016) (requiring § 2255 petitioner to demonstrate cause and prejudice to excuse procedural default of a claim of structural error); *Jones v. Bell*, 801 F.3d 556, 563 (6th Cir. 2015) ("Habeas petitioners must *additionally* show 'actual prejudice' to excuse their default—even if the error that served as the 'cause' is a structural one that would require a new trial") (citing *Ambrose v. Booker*, 684 F.3d 638, 649 (6th Cir. 2012)); *Hatcher v. Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001) (concluding that habeas petitioners must demonstrate cause and actual prejudice to overcome procedural default of a claims alleging structural error).

Because Scott has failed to demonstrate cause for his procedural default, the Court will not address whether the constitutional errors he alleges are structural errors that warrant automatic reversal of his conviction.

"the fact that the law was unsettled, or settled incorrectly in petitioner's circuit" does not excuse the petitioner's failure to attack the validity of his plea on direct appeal. *United States v. Thompson*, 158 F.3d 223, 225 (5th Cir. 1998). "[F]utility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time." *Scruggs*, 714 F.3d at 264 (quoting *Bousley*, 523 U.S. at 623).[85]

Although a procedural default may be excused if a constitutional claim is "so novel that its legal basis is not reasonably available to counsel" when the defendant appeals his conviction, Scott's *Rehaif* claim does not fall into that category.[86] While

---

[85] Moreover, the Fifth Circuit has noted that "parties routinely raise arguments to preserve them for further review despite binding authority to the contrary." *Scruggs*, 714 F.3d at 264.

[86] Scott argues that his *Rehaif* claims are sufficiently "novel" to constitute cause for his procedural default because *Rehaif* reversed circuit court precedent with respect to the *mens rea* requirement of a § 922(g) conviction. *See* R. Doc. No. 105, at 2–5. Citing *Reed v. Ross*, 468 U.S. 1, 17 (1984), Scott asserts that his *Rehaif* claims were not reasonably available because the Supreme Court's decision constituted a "clear break with the past" that "overturn[ed] a longstanding and widespread practice to which [the Supreme Court] has not spoken, but which a near-unanimous body of lower court authority ha[d] expressly approved." *Id.* However, *Reed* is distinguishable from Scott's case. In confronting the question "whether an attorney has a 'reasonable basis' upon which to develop a legal theory," the *Reed* court expressly "confine[d] [its] attention" to situations in which the Supreme Court "has articulated a constitutional principle that had not been previously recognized but which is held to have retroactive application." 468 U.S. at 17. As the Supreme Court explained, when a case is "given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a [lower] court to adopt the position that this Court has ultimately adopted." *Id.* In that situation, the failure of the defendant's attorney to raise such a claim on direct appeal "is sufficiently excusable to satisfy the cause requirement." *Id.*

While the Fifth Circuit has not addressed the issue, the Eleventh Circuit has held that *Rehaif* did not announce a new rule of constitutional law, but, instead, "clarified that, in prosecuting an individual under 18 U.S.C. § 922(g)(1) *and* 18 U.S.C. §

lower court decisions prior to *Rehaif* had held that the government did not need to prove the *mens rea* requirement to convict a defendant under § 922(g), the issue had been litigated in federal courts across jurisdictions for many years prior to Scott's conviction. *See United States v. Butler*, 637 F.3d 519, 524 (5th Cir. 2011) (collecting cases across circuits examining whether the government needed to prove the defendant's knowledge of his prohibited status to establish a violation of § 922(g)); *United States v. Bryant*, No. 11 CR 765 (RJD), 2020 WL 353424, at *3 (E.D.N.Y. Jan. 21, 2020) ("The issue decided in *Rehaif* was percolating in the courts for years.") (collecting cases); *United States v. Wilson*, No. 1:17-CR-60, 2019 WL 6606340, at *6 (W.D. Mich. Dec. 5, 2019) ("[O]ther defendants ha[ve] litigated the issue of whether a defendant's knowledge of his status was a required element for a conviction under § 922(g)."). Thus, Scott has failed to demonstrate that the legal basis for his *Rehaif* claims was not reasonably available to his trial counsel at the time of his plea or his direct appeal. *See Bousley*, 523 U.S. at 622. Accordingly, he has not satisfied the cause standard with respect to the procedural default of his *Rehaif* claims, and he may not be granted relief on those grounds.

---

924(a)(2) . . . the government must prove that the defendant knew he violated each of the material elements of § 922(g)." *In re Palacios*, 931 F.3d 1314, 1315 (11th Cir. 2019). In addition, even if *Rehaif* announced a new rule of constitutional law, it was not made retroactive on collateral review by the Supreme Court. *Id.*; *see United States v. Benton*, No. CR 3:12-00118, 2020 WL 132276, at *2 (W.D. La. Jan. 9, 2020) (Doughty, J.) (agreeing with *Palacios* and dismissing defendant's § 2255 petition as untimely pursuant to § 2255(f)). The *Reed* holding with respect to cause for a procedural default does not apply to Scott.

**III.**

For the foregoing reasons, postconviction relief for Scott under § 2255 is not warranted. Scott has failed to establish that his trial counsel's performance in not filing a motion to suppress fell below an objective standard of reasonableness. He has also failed to demonstrate cause for the procedural default of his *Rehaif* claims.

Accordingly,

**IT IS ORDERED** that Scott's motion pursuant to 28 U.S.C. § 2255 is **DENIED** and **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, March 3, 2020.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**